**STEARNS v. BELMONT et al.**

No. 13642.

United States Court of Appeals Fifth Circuit.

March 8, 1952.

Geo. H. Wallace, Charles B. Cannon and Daniel V. O'Keeffe, all of Chicago, Ill., David W. Dyer, Miami, Fla., for appellant.

E. F. P. Brigham, Phillip Goldman, Miami, Fla., for appellees.

Before HUTCHESON, Chief Judge, and HOLMES and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from a single judgment, entered in consolidated causes Nos. 3394-M and 3395-M, brings up a large record. Because, however, of the nature of the issues, their clear cut summary by the district judge in his opinion, and the clear and helpful briefs, it presents rather simple questions for review.

In cause No. 3394-M, appellant, as assignee owner from one Morris, of patent No. 2,383,912, sued appellee Belmont, as licensee, for an accounting of damages, royalties, and other moneys due to plaintiff.

In cause No. 3395-M, it sued appellees Belmont and Miami Window Corporation for infringement of, and an accounting for damages not less than a reasonable royalty as to, patent No. 2,478,044.

The claim in cause No. 2294-M was: that defendant refused to account to plaintiff, under paragraph 3 of the license agreement,[1] for 25 percent of 90 percent of all moneys and things of value received by defendant from Miami Window Corporation, including 125 shares of its stock, as royalties on windows made under license by it; that instead, falsely, fictitiously, and fraudulently claiming that he "is interested" in said corporation, within the meaning of paragraph 2 of the agreement,[2] defendant is insisting on accounting to him for only 15¢ a window, the amount provided for in that paragraph.

The defense to this suit was that defendant was in truth and in fact interested in the Miami corporation, within the precise meaning of paragraph 2 of the agreement and that the accounting he stood ready to make at 15¢ a window was a true and correct accounting.

By counterclaim, defendant sought (1) a decree cancelling the assignments by Belmont to Stearns of the letters patent No. 2,383,912 and No. 2,478,044, and decreeing Belmont to be sole owner thereof; and (2) a judgment for damages by reason of Stearns' failure to prosecute suits against infringers of patent No. 2,478,044.

The claim in No. 3395-M was that plaintiff was the owner by purchase and assignment from defendant Belmont of all right, title and interest in improvement patent No. 2,478,044; and that defendants had no right therein, or title thereto, and especially no right to use the invention of said patent in making, or licensing others to make, windows.

The defendants, in reply to this claim, insisted that, as shown by par. 4,[3] it was

1. "It is further agreed that, if Belmont causes such windows described in Paragraph 1 to be manufactured by any other person, firm or corporation in which Belmont is not interested, then Belmont shall pay to Morris 25% of 90% of all sums of money received by Belmont from such other person, firm or corporation."

2. "It is further agreed that Belmont will pay to Morris 35¢ for each window described in Paragraph 1, manufactured by Belmont or by any firm or corporation in which Belmont is interested." (This stated royalty was reduced to 15 cents per window by the Modification Agreement of July 25, 1947.)

3. "Belmont hereby assigns to Morris any improvements of said invention which Belmont has now made or may hereafter design or perfect; provided that Morris

of the essence of the Morris-Belmont agreement, which fixes the rights of both plaintiff and defendant Belmont in, and in respect of, the patents in suit, that the license it granted to Belmont included not only the original patent and improvement patent 2,478,044, but any other improvement which Belmont might make. In the alternative, alleging that it was the intention of the parties to so contract, and the failure of the agreement, if there is a failure, to express that intention was the result of mutual mistake, defendants sought a reformation of the contract.

The two cases were consolidated for trial and were fully heard by the district judge, and at the conclusion of the evidence, he announced an oral opinion[4] and gave judgment in favor of defendants on plaintiff's claims against them and in favor of defendants on their counterclaim for reformation in No. 3395–M. Reciting in the judgment that plaintiff was, as claimed by defendants, obligated to prosecute suits against infringers upon patent No. 2,478,-044, he yet denied judgment on defendant Belmont's counterclaim on the ground that plaintiff had not breached the obligation.

Appellant is here insisting that the findings of fact were clearly erroneous and the conclusions of law equally so.

■ We do not think so. As to the first case and the first patent, and the construction of the underlying agreement, it seems clear to us that, on the face of the agreement, the court was correct in its conclusion that Belmont was interested in the Miami Window Corporation within the meaning of clause 2, and that the accounting for the windows the corporation made should be based thereon. Indeed, in view of the undisputed evidence that defendant was an incorporator and director and an officer and stockholder in Miami, there would, but for the testimony given on another trial between other parties, be no basis whatever for plaintiff's claim to the contrary. This testimony relied on by plaintiff here as a conclusive admission against defendants' interest was that he owed plaintiff 25 percent of 90 percent for windows made by Miami Corporation.

Taking this evidence, as plaintiff claims it to be, as an admission against interest, and giving it the full weight to which it was entitled as such, we think that, in the circumstances under which the testimony was given, and considered in connection with the clear provisions of the agreement itself, it does not have the effect claimed for it. Specifically it does not furnish adequate basis upon the evidence as a whole for overthrowing the district judge's findings of fact and law, that Belmont was interested in the company within the meaning of clause 2, and that the royalty due was 15¢ a window, as provided therein. After all, an admission as to one's construction of a legal instrument is not conclusive in the absence of elements of estoppel. Metropolitan Life v. Shalloway, 5 Cir., 151 F.2d 548.

■ As to the second suit and patent and the claim that the defendants were infringers of the improvement patent involved therein, we are of the opinion that the district judge was right in holding that the Morris-Belmont agreement gave Belmont the right to use the improvements in making windows under his license. In addition to the language in Par. 4 of the contract, the evidence shows that without the second or improvement patent, the first patent would not have been usable, and that all the windows made, for which plaintiff seeks an accounting, were made with the use of the improvement patent.

Under these circumstances, it is clear, we think, that the decree denying infringement and confirming defendant's right to use the improvement patent was equitable and right and should be affirmed.

There remains for disposition only the question raised by appellant as to the conclusion set out in the judgment of the court that plaintiff is obligated to prosecute suits against infringers. No complaint is, or could be, made of the judgment apart from this conclusion, since it exonerated plaintiff from fault under the paragraph of the con-

will pay the reasonable cost of making, perfecting and patenting the said improvements."

4. This was later transcribed and appeared in the record.

tract requiring him to protect the patent.[5] The only complaint of the conclusion in the decree, that though the obligation had not been breached, yet it existed and could be enforced, is that it is merely advisory.

Agreeing, as we do, with appellant that this is so and that, being a mere advisory recitation or conclusion, it does not bind defendant as *res judicata* or otherwise, we find nothing in it requiring or admitting of reversal.

The judgment appealed from is affirmed.

---

5. "7. It is distinctly understood and agreed that Morris, his heirs and assigns, at their own expense, and not at any ex-
pense to Belmont, shall prosecute and defend any and all suits involving the infringement of the aforesaid patent."