EQUITABLE LIFE ASSURANCE SOCIETY *v.* GILLAM.

798

No. 14476.   APRIL 14, 1943.   REHEARING DENIED MAY 8, 1943.

*Lovejoy & Mayer,* for plaintiff in error.
*Wyatt & Morgan,* contra.

ATKINSON, Justice. ■ The plaintiff in error complains that the court erred in striking all of its defenses based upon fraud or material misrepresentations in the procurement of the contracts of insurance, on the ground that the incontestable clauses in the pol-

icies precluded the defendant from making such defense. The policy sued on in the first count, originally issued as a life-insurance policy, contained the clause: "This policy shall be (a) incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue, provided premiums have been duly paid, and (b) free from restrictions on travel, residence, occupation, or military or naval service." When the policy was rewritten so as to cover disability, the following clause was added: "The provisions of said policy with respect to incontestability and freedom of travel, residence, and occupation shall not apply to these disability and double-indemnity provisions." The policy contained the clause: "This policy, except as to the provisions relating to disability and double indemnity, shall be (a) incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue, provided premiums have been duly paid, and (b) free from restrictions on travel, residence, occupation, or military or naval service." It is contended by the insurance company that the incontestable clauses expressly except from their application the provisions of the policies which relate to disability benefit.

The case of *Mutual Life Insurance Co.* v. *Childs, 64 Ga. App.* 658 (14 S. E. 2d, 165), involved the clause: "Except for non-payment of premium, and except for the restrictions and provisions applying to the double indemnity and disability benefits as provided in sections 1 and 3, respectively, this policy shall be incontestable after one year from its date of issue." The decision of the Court of Appeals fully discussed conflicting decisions in other jurisdictions where the incontestable clauses and provisions were similar to the clause involved in that case. After quoting at length from Stroehmann v. Mutual Life Insurance Co., 300 U. S. 435 (57 Sup. Ct. 607, 81 L. ed. 732), and Ness v. Mutual Life Insurance Co., 70 Fed. 2d, 59, it was held: "We find nothing in the provisions of the policies sued on which reserves to the insurance company the right to contest the validity of the policies on the ground of fraud or misrepresentations in their procurement. Sections 1 and 3, referred to in the incontestable clause, do not contain anything with reference to this. This right not having been specifically reserved in the incontestable clause, or in sections 1 and 3 of the policies therein referred to, we think, and so hold, that the

proper construction of this incontestable clause is that it precluded the defendant company from making any defense of fraud or material misrepresentations in the procurement of the policies sued on, where the time limit for contesting the policies had expired, as was true in this case."

Counsel for the insurance company insist further that the incontestable clause in the case under consideration differs materially from the one dealt with in *Mutual Life Insurance Co.* v. *Childs,* supra, and also from the clause involved in *Penn Mutual Life Insurance Co.* v. *Childs,* 65 *Ga. App.* 468 (6) (16 S. E. 2d, 103), where it was held: "The clause, 'This policy shall be incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue, except for non-payment of premiums and except as to provisions relating to the disability benefits,' renders the *entire* contract, after the date indicated, incontestable for fraud in its procurement. Accordingly, such clause precludes such defense to defeat recovery for disability benefits otherwise arising within the terms of the provisions." It was said in the opinion: "The phrase 'except as to provisions relating to disability benefits' is not an *express* exception literally designating 'fraud in the procurement' of the policy' as a defense specifically preserved from the force of the clause. The question then is whether, in designating objectively the disability feature, the defense of fraud in procurement of the policy is included in the exception by *necessary implication.* . . We think it was the intention of the parties at the time the contract was executed to exempt the entire contract, both life and disability features, from the defense of fraud in procurement of the policy after the year and from the date the incontestable clause became of force; to preserve the defense at all times of failure to pay premiums; and to preserve to the insurer as to the disability-benefit feature all defenses save that of fraud in procurement of the policy; this we think is the proper application of the incontestable clause." Certiorari was denied in each of the above cases.

In Kiriakides *v.* Equitable Life Assurance Society, 174 S. C. 140 (177 S. E. 40), it was held: "Provision that life policy was incontestable after one year except as to provisions relating to disability and double indemnity did not make disability clause contestable, but entire policy was incontestable after one year, so that,

in action to recover disability payments after policy had been in effect one year, evidence that policy was fraudulently procured was inadmissible." It was said in the opinion: "It will be seen from a study of the disability clause that there are many provisions which have to be complied with before the insured claiming disability can be paid thereunder. . . These all are provisions which the insured must comply with for the society to be bound to pay the disability income. It is right and proper that the insurance company should reserve the right to make its own provisions as to the disability, and that such provisions must be complied with by the insured, but this could not in any event, by judicial construction or otherwise, be held to make the disability clause contestable under the wording of the policy. It will be seen from the above that the entire policy in this case, as in the Ness case [ 70 F. 2d, 59], is incontestable except as to the provisions relating to disability and double indemnity. If the insurance company had desired to except the disability clause from the incontestable clause, this could have been done in plain language, but when the expression is used as to the provisions relating to disability it is logical to say that the insurance company merely reserved to itself the duty to pay disability when the provisions of the disability clause were complied with."

In Klanian v. New York Life Insurance Co. (R. I.), 26 Atl. 2d, 608, it was held: "A provision that life policy was incontestable after two years, except for non-payment of premium and except as to provisions and conditions relating to disability and double indemnity benefits, meant that entire policy was incontestable after two years, except for failure to pay a premium, and except that, in case of a claim based on disability clause or double indemnity benefit clause, a contest could be made, based on any condition or provision in such clause."

In Coodley v. New York Life Insurance Co., 9 Cal. 2d, 269 (70 Pac. 2d, 602),. it was held, that a life policy providing that it shall become incontestable after a specified time precludes any defense after the stipulated period on account of false statements warranted to be true, even though such statements were fraudulently made, unless by the terms of the policy fraud is expressly or impliedly excepted from the effect of such provision; and that a clause providing that the policy insuring against death and disability should

be incontestable after two years, except for non-payment of premiums and except as to conditions and provisions relating to disability benefits, precluded contest of a claim for disability benefits on the ground of fraud in procurement of policy. The following decisions are to the same effect: Penn Mutual Life Insurance Co. v. Kelley, 88 N. H. 351 (189 Atl. 345); Malloy v. New York Life Insurance Co., 103 Fed. 2d, 439 (12); Ostroff v. New York Life Insurance Co., 104 Fed. 2d, 986 (4); New York Life Insurance Co. v. Truesdale, 79 Fed. 2d, 481; New York Life Insurance Co. v. Kaufman, 78 Fed. 2d, 398. See also 29 Am. Jur. 682, § 893; notes in 91 A. L. R. 1470; 94 A. L. R. 1135; 121 A. L. R. 1437.

There is no material difference between the provisions of the old life policy after attaching the rider, as set out in the first count of the instant case, and the language: "This policy, except as to the provisions relating to disability, . . shall be (a) incontestable," as contained in the second count. Accordingly they will be considered together.

Counsel for the plaintiff in error cite a number of cases which construe the identical language now under consideration in accordance with their contentions. If these decisions were to be followed, they would require a different result. The cases relied on are: Deem v. Equitable Life Assurance Society, 91 Fed. 2d, 569; Greber v. Equitable Life Assurance Society, 43 Ariz. 1 (28 Pac. 2d, 817); Isom v. Equitable Life Assurance Society, 138 Fla. 260 (189 So. 253); Smith v. Equitable Life Assurance Society, 169 Tenn. 477 (89 S. W. 2d, 165). While the authorities on which our present decision is placed construed incontestable clauses of slightly varying language, there is no substantial difference.

After carefully weighing the conflicting authorities, it appears that the decisions which have adopted the construction which was followed by the Supreme Court of South Carolina and the Court of Appeals of this State are supported by the better reasoning, and are most consistent with well-established rules of construction applicable to instruments drawn by one of the parties to a contract. Accordingly, the incontestable clauses in the instant case mean simply that the principal amounts stated in the policies will be payable without contest after the period stated, but that the right to contest total disability and double indemnity is reserved, so that the insurer may show that the insured is not totally disabled, or

that his death did not occur in such manner as to fix liability for double indemnity. The exception of these provisions, however, applies for this purpose only, and not for the purpose of showing that the policy was void for fraud or other matter relating to its inception. If the foregoing is not the clear meaning of the policies, they are at least ambiguous on the point; and such will be taken as their meaning, under the rule that ambiguous provisions will be construed most strongly against the insurer.

We can not agree with counsel of the insurance company, or follow the cases cited, on the proposition that the meaning of the clauses here is so clear and obvious that they do not require construction. That is rarely true of any statement containing more than a very few words. Each policy refers to three different matters: (1) the fixed or principal amount of the life insurance, (2) double indemnity, depending on the cause of death, and (3) total disability benefits. The policy must be considered in the light of reason, in view of its purposes, the situation of the parties, and the benefits to be conferred.

As to the right to attack the policy for fraud or other cause that would invalidate it from the beginning, we can not think of one single reason why the parties would wish to make a distinction between the fixed or principal amount referred to above as life insurance, and either of the other features, by providing that the policy would become incontestable as to the first-mentioned feature, but not as to the others. On the other hand, the company could very naturally be willing to grant incontestability as to all features as related to causes that were antecedent, and affected the basic framework, and yet still wish to reserve the right to contest a claim of accident giving rise to double indemnity, or a claim of total disability, each depending on matters arising after the policy came into existence. There would be absolutely no inconsistency in reserving the latter right, while waiving the former; but it would seem inconsistent, if not absurd, to waive the right to attack a policy for a cause such as fraud in its inception, and to make a waiver of that character apply solely to the life-insurance feature, and not to the clauses as to double indemnity and total disability. Hence it seems the more reasonable interpretation to say that the exception as to the two latter features was not intended to reserve the right of attack for inceptive fraud or the like, and that all the

exception was intended to do was to reserve or safeguard the right to contest the extra grounds on which such superadded claims might be. made. Any other interpretation of the incontestable clauses would not, it seems to us, comport with reason or represent the intention of the parties; and therefore, in our opinion, the court did not err in sustaining the demurrer of the insured and in striking the plea of the insurance company of fraud in procurement of the policies, to defeat recovery of benefits arising under the disability-benefit provisions.

■ "The several insurance companies of this State and foreign insurance companies doing business in this State, in all cases when a loss shall occur and they shall refuse to pay the same within 60 days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss, not more than 25 per cent. on the liability of said company for said loss; also, all reasonable attorney's fees for the prosecution of the case against said company: Provided, it shall be made to appear to the jury trying the case that the refusal of the company to pay said loss was in bad faith." Code, § 56-706. The motion for new trial complains of the portion of the verdict that awarded $500 as attorney's fees. The court having stricken on demurrer the defense of fraud in procuring the insurance contract, and thereby preventing the defendant from introducing any evidence on this question, the sole issue was the question whether the plaintiff was totally and permanently disabled. Counsel for the insurance company concede that had the sole defense been merely that the plaintiff was not totally and permanently disabled as claimed by him, the evidence was sufficient (provided the plaintiff had made a demand sixty days before filing suit, which fact is denied) to submit the question of damages and attorney's fees to the jury.

It is insisted in the brief of counsel for the insurance company: "On the question of bad faith the court should have taken into consideration the question raised by the defendant in that portion of the answer which was stricken on demurrer. This question was certainly of sufficient doubt and gravity as to authorize the defendant to submit the matter for decision to the courts. The question involved under the incontestable clauses of these policies has never been adjudicated by the courts of this State. In view of

this, the defendant certainly had the right to resort to the courts for an adjudication of this question, and could not and should not be charged with bad faith in so doing." The evidence on the question of bad faith consisted of correspondence between plaintiff and the insurance company. On September 18, 1941, the plaintiff wrote: "Under the terms of my policies, I am entitled to the benefits provided for in the total and permanent disability, waiver of premium, and monthly-income sections of these policies; therefore please advise me as to the necessary procedure to obtain these benefits." The forms were promptly furnished by the company. On October 6, 1941, the plaintiff wrote a letter inclosing certain forms that had been made out, and asking if any further information was necessary. This letter was promptly answered by the company, further information being requested. On October 17, 1941, the plaintiff sent additional information. On November 13, 1941, the plaintiff wrote, stating: "On September 18, 1941, I filed claim for the benefits due me under the disability clauses of my insurance policies. It seems to me that you have had ample time to make all the investigation necessary. Therefore please advise me what you expect to do about my claim." On January 15, 1942, the plaintiff wrote, stating in effect that he had waited long enough, and that unless he received a favorable reply very soon he would place the matter in the hands of his attorney for collection. The insurance company objected to admission of the last-mentioned letter in evidence for the purpose of showing bad faith, because it was written less than sixty days before suit was filed on February 18, 1942.

The pleadings and the evidence in the instant case do not disclose that the insurer's refusal to pay the plaintiff's claim was frivolous or unfounded in law or in fact, or that the defendant was stubbornly litigious and subjected the plaintiff to unnecessary trouble or expense. The incontestable clauses of the policies in question, while similar to the clauses involved in *Mutual Life Insurance Co. of New York* v. *Childs*, 64 *Ga. App.* 658, and *Penn Mutual Life Insurance Co.* v. *Childs*, 65 *Ga. App.* 468 (supra), have never been construed by either of the courts of review of this State. The legal questions involved in the preceding division are not easy of solution, and are of such a character as to acquit the defendant of bad faith in refusing to pay the claim. *New York*

*Life Insurance Co.* v. *Watson,* 48 *Ga. App.* 211, 214 (172 S. E. 602) ; and cit. *Security Insurance Co.* v. *Jackson,* 54 *Ga. App.* 131 (187 S. E. 234). Therefore that portion of the verdict assessing attorney's fees against the defendant was unauthorized; and the judgment is affirmed on condition that the plaintiff write off from the verdict and judgment $500, the amount returned for attorney's fees; otherwise the judgment is reversed. The plaintiff in error having obtained a substantial modification in the judgment of the lower court, the costs of this writ of error are taxed against the defendant in error. *Anderson* v. *Beasley,* 169 *Ga.* 720, and cit.

■ The evidence was sufficient to support the finding that the plaintiff was totally disabled.

*Judgment affirmed on condition. All the Justices concur, except Reid, C. J., who dissents.*