METROPOLITAN LIFE INS. CO. v. SHALLOWAY.

No. 11236.

Circuit Court of Appeals, Fifth Circuit.

Oct. 22, 1945.

Victor Lamar Smith, of Atlanta, Ga., for appellant.

Herbert Johnson and Clarence H. Calhoun, both of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

In a suit by Jennie Shalloway upon a policy of life insurance taken out by her husband David Shalloway a verdict was directed in her favor for $7500 (less a loan against the policy) because of a clause in the policy that it should be incontestable after two years, and the insurer, Metropolitan Life Insurance Company, appeals.

The Company contends that the insured was over sixty years old at his death and that only $5,000 was payable, and that this was subject to be reduced to $4680 because of a misstatement of his age by the insured in his application for the policy. Payment of this sum was tendered. It is also argued that the insured consented to and is estopped to deny the age status asserted by the Company by failing to dispute it and by accepting certain disability payments shortly before his death based on that age status.

The important policy provisions are these:

"Metropolitan Life Insurance Company * * * in consideration of the application for this policy, copy of which application is attached hereto and made a part hereof, and of the payment of (the premiums stated), promises to pay at the home office of the Company in the City of New York * * * upon due proof of the prior death of the insured, upon surrender of this policy, to Jennie Shalloway, wife beneficiary, Five Thousand Dollars (herein called the face amount),

"Or Seventy-Five Hundred Dollars if death occur before the insured has attained sixty years of age,

"Or Ten Thousand Dollars, if before the insured has attained sixty years of age and before the allowance of any disability benefit death occurs in consequence of bodily injury effected solely through external, violent and accidental means * * *

"The Provisions and Benefits printed or written by the Company on the following pages are a part of this contract * * *
    "Provisions and Benefits.
    *   .*    *    *    *    *

"2. Age. If the age of the insured has been misstated, any amount payable hereunder shall be such as the premium paid would have purchased at the correct age.

"3. Incontestability. This policy (and the application therefor) constitutes the entire contract between the parties, and except for non-payment of premiums shall be incontestable after two years from date of its issue. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties,

and no such statement shall avoid this policy or be used in defense of a claim hereunder unless it is contained in the written application therefor and a copy of such application is securely attached to this policy when issued."

The application, executed in Atlanta, Georgia, and attached to the policy states, among other things:

"Date of birth: September 28, 1882.

"Age nearest birthday: 36.

"Place of birth: Friedrichstadt, Russia.
* * *

"And it is further declared and agreed that the foregoing statements and answers, and also the statements and answers to the Medical Examiner, are correct and wholly true, and that they shall form the basis of the contract of insurance if one be issued."

The policy, executed in New York, is dated June 9, 1920. The death occurred May 19, 1941. The Company introduced naturalization proceedings of David Shalloweigh in which he made oath that he was born at Friedrichstadt, Russia, 24th day of September, 1880. In rebuttal Mrs. Shalloway, who married him in the United States, and their son testified that the insured had always claimed he was born on September 28, 1882, and the family had kept track of their birthdays. Five applications for life insurance in other companies dated from 1910 to 1925 were in evidence in which Shalloway gave his birth as in September, 1882. His application to join the Jewish Congregation in Atlanta on March 1, 1939, stated his age as 56. On the other hand it was proved that when in July, 1940, the insured applied for disability benefits under the policy in suit the Company, having seen the naturalization proceedings, wrote insured that because of his misstating his age by two years, as appeared from these proceedings, his benefits, by reason of the "Age clause" in the policy, would be reduced, and the insurance would be $4680 instead of $5000; $7068 instead of $7500; and $9568 instead of $10,000, and he was advised to attach the letter to the policy. It is admitted this letter was received and no reply was made, and that eight monthly checks for total and permanent disability benefits in the reduced amounts were sent out by the Company and collected by insured.

■■ There is no evidence of Shalloway's age at his death save his own statements and the repute in his family, and his failure to deny the age stated by him in the naturalization proceedings when it was brought to his attention by the Company's letter. By provisions of the policy not quoted the insured was to receive the $5000 if living on June 9, 1967, and the the right to change the beneficiary was retained, and if the beneficiary should die before the insured, the interest of such beneficiary was to vest in insured. So Mrs. Shalloway had no vested right in this insurance till her husband's death. His statements and admissions, verbal or by conduct, are evidence against her to the extent they would have been evidence against him if he were suing. There was plainly an issue for the jury as to what his true age was, if that is a matter which is open to enquiry.

The view of the trial judge was that the incontestable clause of the policy prevented such enquiry, because it expressly referred not only to the policy, but also to the application, and put both beyond any contest. Shalloway v. Metropolitan Life Insurance Company, D.C., 56 F.Supp. 185. The opinion we think overlooks authorities and considerations which are controlling in this case.

■■ It is universally held that the incontestable clause, after the lapse of time it names, prevents nullification of the insurance contract for any cause not excepted in the clause. But here the Company's effort is not to nullify the insurance contract, but recognizing its validity, to ascertain and live up to its terms. To do this is not to contest it, but to apply it properly. There are really several insurances in this contract, each effective on different conditions. The "face value" is $5,000, to be paid to the insured if he should live till June 9, 1967. This condition did not come to pass. On his death before that date, this face value of $5,000 is to be paid to the named beneficiary. He did so die. A third alternative, on which the verdict was directed, is that an increased amount of $7500 will be paid the beneficiary "if death occur before the insured has attained sixty years of age." Dying May 19, 1941, he must have been born after May 19, 1881, to fulfill this condition. Yet a fourth alternative is that $10,000 will be paid if the death occurs before age sixty, without any disability benefits having been allowed, and by bodily injury through violent and accidental means. As an original proposition it seems clear to us that just as Mrs. Shalloway would have

to prove the condition that her husband is dead in order to claim $5,000, she has to prove additionally that he died before attaining sixty years of age in order to claim $7500; and to claim $10,000 she would have further to prove accidental violent death with an absence of allowed disability benefits. For the Company to contest any of these facts is not to contest its policy, but admitting its validity, to require establishment of the facts necessary to its proper application and fulfillment.

There is some conflict of authority as to the effect of the incontestable clause upon the enquiry into the performance of other provisions and conditions of the policy, some cases holding that after the period of contestability no defense can be made by the insurer beside those excepted in the clause itself, when any are so excepted; other cases holding that it is the validity of the policy only which becomes incontestable, the conditions of the insurance and coverage being unaffected. 29 Am.Jur., Insurance, § 885. This court in Sanders v. Jefferson Standard Life Ins. Co., 5 Cir., 10 F.2d 143, where the policy was incontestable after one year for any cause except nonpayment of premiums, and promised to pay $20,000 for death from ordinary causes, and $40,000 for death by accidental causes, excepting a case of death by bodily injury inflicted by another or by the insured himself, and death was caused by an intentional gunshot wound inflicted by another without fault of the insured, held that the insurer could contest the claim for $40,000, having paid the $20,000. We said: "By the policy the insurer promised to pay specified sums of money in specified contingencies. We think full effect is given the above-quoted provisions by holding that, after the policy had been in force for one full year, and in the absence of any default in the payment of premiums, the insurer became incontestably liable to pay $20,000, if the insured died from what was called 'ordinary causes,' and an additional $20,-000 if the death * * * resulted from a bodily injury not within any exception stated in the double indemnity provision. In the one case as well as the other, the liability of the insurer was conditioned upon the happening of the contingency which, by the terms of the policy, was to give rise to that liability. Where the beneficiary sues on a life insurance policy, which by its terms was incontestable when the death of the insured is alleged to have occurred, it is open to the insurer to dispute its liability on the ground that the death of the insured had not occurred. Northwestern Life Ins. Co. v. Johnson, 254 U.S. 96, 101, 102, 41 S.Ct. 47, 65 L.Ed. 155. A provision for incontestability does not have the effect of converting a promise to pay on the happening of a stated contingency into a promise to pay whether such contingency does or does not happen. It cannot properly be said that a party to an instrument contests it by raising the question whether under its terms a liability asserted by another party has or has not occurred." This decision was followed in United States v. Kaminski, 5 Cir., 64 F.2d 735. The Georgia Court of Appeals approved and followed these cases in Hollis v. Travelers Ins. Co., 49 Ga.App. 274, 175 S.E. 33, and the Supreme Court of Georgia appproved all three in Riley v. Industrial Life & Health Ins. Co., 190 Ga. 891, 11 S.E.2d 20. Like views are expressed by the Court of Appeals of New York: Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, which twice cites our Sanders case; Apter v. Home Life Ins. Co., 266 N.Y. 333, 194 N.E. 846, 98 A.L.R. 1281; New York Life Ins. Co. v. Veit, 294 N.Y. 222, 62 N.E.2d 45.

In the case at bar the insured resided in Georgia and made his application there. The insurer has its home in New York and executed the policy and made it payable there. We need not look beyond the law of these two States on this point. Under the law of neither does the insurer contest the policy by insisting on its terms as a valid contract.

■■ The argument then shifts to the point really held by the trial judge, that the application is a part of the contract, and is expressly referred to as such in the incontestable clause, and that its statements, like the promises of the policy, become incontestable after two years, including the statement that Shalloway was born Sept. 24, 1880, and was thirty-six years old when the insurance took effect. We need not consider this argument in reference to any statement except as to age, for age is specially dealt with in the policy in the above quoted clause which immediately precedes the incontestable clause. The natural and fair meaning of this provision is that the matter of the insured's age shall be open to investigation during the life of the policy, and if a misstatement as to it is discovered it shall not avoid the policy, but "any amount payable under it,"

whether at or before insured's death, shall be adjusted to the true age. We see no reason why this agreement, fair to both parties, and operative in favor of either, should be thought limited to two years. When a supposed misstatement was discovered in 1940 the Company understood the agreement to be operative and applied it, notifying the insured, who acquiesced and received the payments due him thus adjusted. This adjustment was not a contest of the policy forbidden by the incontestable clause after two years. And the same is true as to the amount, whatever it may be, which became payable at insured's death. We so held in Equitable Life Assur. Soc. v. First National Bank, 5 Cir., 113 F.2d 272, where a State statute furnished the incontestable clause. And see 29 Am.Jur., Insurance, § 890. We see no reason why the question of true age as affecting the right to $7500 at death instead of $5,000, should be any more strictly foreclosed after two years than for purposes of age adjustment. The policy promises to pay $7500 if the insured should die before attaining sixty years of age, not mentioning the age given in the application. It means the insured's true age. To contest about this true age is not to contest the policy.

But the Company also seeks to foreclose the issue of true age in its own favor by contending that the insured in his lifetime was informed by letter that by his naturalization proceedings it was shown that his true age was two years more than his application stated and that adjustment would be made of all sums payable under the policy accordingly, the results being set forth in detail. Insured received the letter and did not reply, and used the total and permanent disability checks sent for the reduced amount till his death. He still resided in Georgia, and reliance is put upon Section 38-120 of the Georgia Code which reads: "In the ordinary course of business, when good faith requires an answer, it is the duty of the party receiving a letter from the other to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts mentioned in the letter of his correspondent, and to adopt them." The presumption is not an irrebuttable presumption of law, but one of fact, and the failure to reply is subject to explanation. Travelers' Ins. Co. v. Sheppard, 85 Ga. 751, 792, 12 S.E. 18. The principle indeed is the same as that expressed more generally in Ga.Code, § 38-409: "Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission." A charge to the jury of the latter section was held a sufficient equivalent for the former when there was no written request to charge the former. Butler Bros. v. Goldstein, 49 Ga.App. 109, 174 S.E. 479. An admission, while admissible evidence, is of course not in itself an estoppel. It is weighed by the jury with the other evidence in the search for the real truth. The Company here was not misled by Shalloway's silence; it did not change its position for the worse. It merely paid what it contended was due, which was less than its policy appeared to call for. There is evidence that Shalloway was at the time totally and permanently disabled, and his mind dulled. If he understood at all, he may have thought the reduction in the disability payments of a few dollars not worth a protest. We perceive no estoppel, or novation of the insurance contract. This silence and acquiescence are for the jury to consider for what light they may throw on the truth.

An exception is taken to the ruling out as evidence of a certified copy of what was claimed to be Shalloway's declaration of intention to become a citizen, in which he stated his age and birth the same as in the naturalization proceeding. The objection sustained was want of proper certification. The objection can be removed before another trial, so we decline to investigate and rule upon it.

For error in directing the verdict, the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.