WASHINGTON NATIONAL INSUR-
ANCE COMPANY, Appellant,

v.

J. D. BURCH, Appellee.

No. 17566.

United States Court of Appeals
Fifth Circuit.

Sept. 15, 1959.

J. Lundie Smith (of Copeland & Smith), Valdosta, Ga., for appellant.

David Dudley Smith, Will Ed Smith, Smith & Harrington, Eastman, Ga., for appellee.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

The determinent question upon which decision of this appeal rests is this: Where suit is brought by a beneficiary named in a certificate issued under a group insurance policy against the insurer which executed the master policy, is the insurer prevented by the incontestable clause of the master policy from defending upon the ground that the insured was not eligible for insurance under the terms of the master policy; or, if he was so eligible, that he was not entitled to be classified in the group to which the certificate assigned him?

Appellant Washington National Insurance Company (Insurer) issued a master group insurance policy to the American Turpentine Farmers Association Cooperative (Holder), its effective date being August 1, 1955. The policy bound the insurer to pay the proper beneficiary "the sum to which such insured person is entitled in accordance with the classification specified in the schedule of insurance." [1] The policy defined five classes of

[1]. Pertinent portions of this classification and of certain terms of the policy governing eligibility are:

"Schedule of Insurance

Classification

| I. | Owners, Executives and Directors with 20,000 or more faces.. | $10,000.00 |
| IA. | Owners, Executives and Directors with less than 20,000 faces | 2,500.00 |
| II. | Foremen, Woods Riders and Office Employees | 2,500.00 |
| III. | All other Employees | 1,000.00 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

"The term employees shall include sole proprietors, partners of a member firm, and officers and directors of corporate members; provided, however, sole proprietors and partners are eligible under this policy only if they are actively engaged in and devote a substantial part of their time to the conduct of their business and directors of a corporate [sic] are eligible under this policy only if they are otherwise eligible as a bona fide employee of the corporation by performing services other than the usual services of a director."

eligible persons who might become insureds under its terms and provided for the termination of individual insurance under a variety of circumstances described in clause 8 of the policy.[2]

The master policy contained the usual provision that "This policy shall be incontestable after one (1) year from the date of issue except for the non-payment of premiums," as well as the provision that "The Company will issue to the Holder for delivery to each person insured under this Policy an individual certificate describing the insurance protection to which such insured person is entitled, [and] designating to whom the insurance benefits are payable * * "

Appellee J. D. Burch [3] alleged that his father, W. A. Burch, the holder of a certificate under the master policy providing for insurance in the sum of $10,000, had died Dec. 3, 1956, and judgment was demanded in said sum plus statutory damages, interest and attorney's fees provided by Georgia law.

The insurer answered, denying generally that it was liable under the policy and certificate in the sum of $10,000; and filed six special defenses setting forth in general that the insured was erroneously classified by the Holder in Class I (Fn. 1 supra) when he ought to have been classified in Class IA, and that the Holder, on Nov. 9, 1956, reclassified the insured in Class IA and notified him of such reclassification and remitted the overpayment of premium to him. The answer further charged that the insured had submitted an application for insurance in which he fraudulently represented himself to be in classification I. While, as stated, the answer denied all liability for the death of the insured, it acknowledged in several places that it admitted liability in a sum of $2,500 under classification IA, and that it was making a continuing tender of that amount.

Trial by jury having been demanded by appellee, a jury was empaneled and the trial was opened by a question from appellee's attorney: "May I make a statement to the jury?" The court responded: "Yes, I would like for both sides to make an opening statement to the jury and tell them what the case is about." Whereupon the attorneys for both the litigants made statements to the court and jury based upon their respective pleadings, along with some testimony and exhibits contained in appellant's answers to interrogatories which had been propounded to it under Rule 33, F.R.Civ.P. 28 U.S.C.A.

Appellee's attorney, in his opening oral statement, mentioned for the first time the facts which would determine whether insured W. A. Burch was entitled to be classified in Class I or belonged in Class IA.[4] In reply, the attorney for the appellant discussed in his oral statement the

2. "Termination of Individual Insurance. * * * The insurance of any employee of a member of the Holder shall terminate at the end of the policy month in which his active employment with his employer shall end. The insurance of any sole proprietor or any partner covered hereunder shall terminate at the end of the policy month in which he ceases to devote a substantial part of his time to the conduct of his business. The insurance of any director of a corporate employer member covered hereunder shall terminate at the end of the policy month in which he ceases to be eligible as a bona fide employee of the corporation by performing services other than the usual duties of a director. * * * The Holder shall give written notification of any individual termination to the Company. Such written notification by the Holder

shall be satisfactory evidence that such insurance has terminated, and shall release the Company from all claims on account of the insurance so terminated. * * * "

3. His brother and partner, L. R. Burch, was also a beneficiary in the certificate, but he died before the insured.

4. A part of appellee's opening statement is as follows:

"Some question was raised as to whether W. A. Burch was entitled to $10,000.00 worth of insurance, or was entitled only to $2,500.00 worth of insurance, and that came about in this manner: The master policy provides that owners and members of partnerships and directors incorporated which were working more than 20,-000 cups—turpentine cups, or faces, were entitled to $10,000.00 worth of in-

question of the proper classification of the insured W. A. Burch.[5] These excerpts from the statements of counsel demonstrate that the question of whether insured was entitled to insurance at all, and whether he would be classified in Class I or Class IA could be resolved only by proof of his status measured by the standards so fixed by the master policy.

But the court below came promptly to the conclusion that the question of the eligibility and the classification of the insured were foreclosed by the incontestable clause of the master policy, so that the appellant was bound by the certificate which had been delivered to the insured showing that his classification was such that his beneficiary would be entitled to the $10,000 mentioned therein, regardless of whether his initial classification was proper under the facts or whether it had been terminated by the action of the Holder.[6]

The court, therefore, concluded from the pleadings, the interrogatories and answers, and the statements of counsel, that no legitimate question of fact was involved, but that the entire defense sought to be interposed by the appellant was foreclosed under the incontestable clause of the master policy. On its own motion, therefore, judgment was entered in appellee's favor against appellant for the full ten thousand dollars mentioned in the face of the certificate.

We do not agree. While there are cases apparently to the contrary, we think that it is settled law that the incontestable clause does not preclude the insurer from showing that a claim based upon the death of the insured in a case like this is outside the coverage of the policy or of the classification in which the individual certificate places him.[7]

Probably the closest case on the facts is the decision of the Court of Appeals

surance, and those individuals who were not working 20,000 turpentine cups could get $2,500.00 worth of insurance.

5. "\* \* \* Members of the Association and employees of members of the Association and the eligibility of a partnership was determined by the number of trees or turpentine faces that that partnership was working. A man who was not a member of a partnership but owned some land of his own and leased some turpentine faces to a turpentine partnership became eligible to obtain this insurance if he paid dues to the Association and the amount of the insurance to which he was entitled to was measured by the number of turpentine faces that he sold to the partnership. If he leased 20,000 or more faces he was eligible for $10,000.00 worth of insurance. If he leased less than 20,000 faces he was eligible for $2,500.00 worth of insurance and no more.

"Now, as his case unfolds you will see, first, that Mr. W. A. Burch, the named insured, the man to whom the policy or certificate was issued to was not a member of the Association. He was not a partner in the firm of Burch Brothers. \* \* \*

"Another requirement for an insured under this certificate is that he must be actively engaged and devote a substantial part of his time to the conduct of the business. You will find out that

Mr. W. A. Burch was nearly 80 years of age, almost entirely blind, and devoted no part of his time to the conduct of his business. \* \* \* Even if Mr. W. A. Burch owned the land, which he did not, and had leased turpentine faces to this partnership, you will see as the evidence unfolds that he leased only 5,570 turpentine faces, and that entitled him to $2,500.00 worth of insurance and no more, \* \* \*"

6. The pleadings aver that upon discovery by the Holder on or about Nov. 9, 1956 that the classification of W. A. Burch was erroneous and that he should be classified in Class IA, reducing the amount of insurance to which he was entitled to $2,500, he was notified of the change in classification.

7. Carp v. California-Western States Life Ins. Co., 5 Cir., 1958, 252 F.2d 337; Metropolitan Life Ins. Co. v. Shalloway, 5 Cir., 1945, 151 F.2d 548, and other Fifth Circuit cases therein cited; 45 C.J.S. Insurance § 751, p. 770; Hollis v. Travelers Ins. Co., 1934, 49 Ga.App. 274, 175 S.E. 33; and cf. Fisher v. United States Life Insurance Co., 4 Cir., 1957, 249 F.2d 879; New York Life Insurance Co. v. Bennion, 10 Cir., 1946, 158 F.2d 260; Simmons v. United States, D.C.Pa.1954, 120 F.Supp. 641.

for the Fourth Circuit in Fisher v. United States Life Insurance Company in City of New York, 1957, 249 F.2d 879. The insurance company had issued a group policy to the trustees of a division of the Oil Institute of America, and Herman H. Fisher, Inc. was named in the policy as a contributing employer so that its eligible employees were entitled to insurance. The employer reported its president, Herman H. Fisher, as entitled to insurance and the insurance company issued him a certificate. About two and one-half years later he died and it was discovered that he had been ill all the while and was not actively engaged as an employee of the Fisher Company. The insurer defended a suit by Fisher's beneficiary on the ground that he was not eligible for insurance under the terms of the policy. The beneficiary claimed that the incontestable clause, almost identical to the one here before us, prevented the insurer from questioning the validity of the certificate issued to Fisher, which the beneficiary made the basis of her suit. The United States District Court for Maryland entered a judgment in favor of the insurance company upon the finding of a jury that Fisher was not actively employed by the Fisher Company, Fisher v. United States Life Insurance Company, etc., 1956, 145 F.Supp. 646.

The language used by the Court of Appeals for the Fourth Circuit in a case bearing the same title, 249 F.2d 879, 882, affirming the decision of the district court, is expressive of the general rule:

" * * * the incontestable clause, * * * proscribes defenses which go to the validity of the policy whether because of noncompliance with conditions or the falsity of representations or warranties. It was never intended to enlarge the coverage of the policy, to compel an insurance company to insure lives it never intended to cover or to accept risks or hazards clearly excluded by the terms of the policy. As then Chief Judge Cardozo, speaking for the New York Court of Appeals in Metropolitan Life Insurance Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, said:

" 'The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. * * * *'

" * * * Clearly it was the intention of the parties to the master policy to provide insurance for the benefit of people actively employed by participating employers, but, as clearly, the limitations they provided foreclose any assumption that it was intended that other persons might be covered by the insurance or that a particular employer, on a selected basis, might extend the insurance to a stranger to the defined class merely by reporting his name to the trustees and remitting the requisite premium.

* * * * * *

"The individual certificates issued by the insurance company are not a part of the contract, which is contained entirely in the application of the trustees and in the group insurance policy issued to them. The certificates contain no insuring clauses or undertakings beyond the provisions of the contract and the plaintiff's case cannot be founded upon the issuance of a certificate in the name of Mr. Fisher. See Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732."

Our recent decision in a case arising in Texas presented questions so nearly similar to those before us as to be dispositive of this case, Carp v. California-Western States Life Insurance Co., 1958, 252 F.2d 337 (citing the Fisher case supra). The company had issued a master policy

of group life insurance covering the employees of an optical company in Dallas, Texas. Pursuant to that company's application, the insurer issued a certificate to Mrs. Mary F. Carp insuring her life in the amount of $10,000, and the suit was by her beneficiary. The insurer defended on the ground that, although the certificate was issued, Mrs. Carp was never in fact an employee of the master policy holder, or if so, she was placed in the wrong classification. We discussed the law quite generally in affirming a jury verdict for the insurance company and stated in part (252 F.2d at page 340):

"The company therefore in contesting the employee's eligibility for insurance under the group policy is not raising an issue of invalidity upon which it might bear the burden of proving a specific defense, but simply the failure of the employee to satisfy the policy provisions. That questions of coverage do not relate to the invalidity of the policy is also demonstrated in those decisions allowing the insurance company to raise that defense after the expiration of the incontestable period where it is held that the company is seeking to enforce the contract and not avoid it (see Fisher v. United States Life Insurance Co., 4 Cir., 249 F.2d 879). It is our holding, in the light of the foregoing authorities, that the burden of proof on the issue of employment, is clearly upon the plaintiff."

We find in the Georgia cases and statutes nothing which militates against the conclusions announced in the foregoing cases, which we find to be declaratory of the general law. In fact, we reached a similar conclusion in a case involving a decision of the United States District Court for the Northern District of Georgia, which passed upon an insurance policy on the life of a Georgia citizen in Metropolitan Life Ins. Co. v. Shalloway, 1945, 151 F.2d 548. The question there was the proper classification to which the insured belonged, and the beneficiary claimed that this question was foreclosed by the incontestable clause. We held to the contrary, stating that to determine the coverage of a policy or the classification of those insured was not to contest the policy, but to apply it properly.

We hold, therefore, that the incontestable clause of the master policy did not apply to the defenses raised by the insurer as disclosed in its answer and the opening statements of its counsel. The question of whether the insured came within the category of those entitled to insurance as defined in the master policy and, if so, which of the classifications he belonged to, are questions which should be considered by the trial court unimpeded by the terms of the incontestable clause.

We do not reach, as the court below did not reach, the questions of waiver and estoppel argued by appellee but not framed by any of the pleadings.[8] Questions of waiver and estoppel are most often questions of fact. At all events, they were not raised in the pleadings before the court below, were not considered or passed upon by it in rendering its judgment, and will be sent back with the case for an orderly first disposition by the trial court.

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

**8.** Appellee's attorney included in his opening statement the contention that R. F. Burch, brother of the insured, solicited the insurance and advised the Burches that their classification for insurance purposes would be based upon the qualifications of the person to whom the timber was leased; and also the contention that, since insurance agent Burch knew that insured W. A. Burch had only 5,570 faces and the Holder of the policy knew this, the insurer was estopped to plead that the insured was not to be classified in Class I according to the certificate issued to him.