Robert J. KEATEN, Plaintiff-Appellant,

v.

The PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts Corporation, Defendant-Appellee.

No. 79–2656.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 18, 1981.
Rehearing Denied Aug. 4, 1981.

Schreeder, Wheeler & Flint, Lawrence S. Burnat, Atlanta, Ga., for plaintiff-appellant.

Carter, Ansley, Smith & McLendon, H. Sanders Carter, Jr., Thomas E. Magill, Atlanta, Ga., for defendant-appellee.

Before GEWIN,* MORGAN and RO-NEY, Circuit Judges.

GEWIN, Circuit Judge:

Robert J. Keaten, the herein named plaintiff-appellant, appeals from the district court's summary judgment order rendered for the defendant-appellee insurer (Paul Revere Life). After careful consideration of the applicable Georgia precedent, we affirm.

On August 12, 1976, Paul Revere Life issued a total disability insurance policy[1] to the appellant with a written and signed application attached thereto.[2] Almost two years later, the appellant allegedly became totally disabled as a result of heart trouble. Keaten thereafter submitted a "Notice of Disability" to the insurance company seeking benefits under the policy mentioned above. After examining the appellant's medical records, the insurer learned that he had suffered from a heart condition prior to the policy's effective date. Therefore, in a letter dated August 23, 1978, Paul Revere Life denied the claim under the terms of the policy excluding such pre-manifested diseases.[3]

As a result, appellant instituted suit to recover policy benefits in the appropriate Georgia trial court three and one half months later. However, the insurance company, contending there was diversity jurisdiction, succeeded in removing the case to federal district court. Thereafter, both parties stipulated as to the facts and filed cross-motions for summary judgment accompanied by supporting affidavits. On June 26, 1975, the district court saw fit to grant the appellee's motion while simultaneously denying the appellant's. Keaten subsequently filed a timely notice of appeal to this court.

Our inquiry must necessarily involve a detailed analysis, under Georgia legal principles,[4] of two issues. Both questions deal ultimately with the concept of estoppel. *First*, whether a statutorily required incon-

---

* *Judge Gewin prepared the above opinion before his death on May 15, 1981.*

1. The policy had an incontestability clause as required by section 56–3004 of the Code of Georgia Annotated. The code section reads as follows:

 (a) After two years from the date of issue of this policy *no misstatements* made by the applicant *in the application* for such policy *shall be used to void the policy or to deny a claim for* loss incurred or *disability (as defined in the policy) commencing after the expiration of such two year period.*

 (b) *No claim for* loss incurred or *disability (as defined in the policy) commencing after two years from the date of issue of this policy* shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective *on the date of loss* had *existed* prior to the effective date of coverage of this policy. (emphasis added).

 Although part *b* of the clause reads in the policy the same as in the statute, part *a* differs slightly. In the policy, part *a* reads: "After this policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the application."

2. It was disputed below whether the appellant actually told the insurer's agent that he had previously experienced heart trouble. Keaten alleged that he gave a full and truthful account of all past treatments he had received for the condition. He contended that not only did the agent falsely omit such information while filling in the application but that the agent told him he would be covered for heart disease after two years anyway. However, the agent contended that he merely answered the questions with the same responses that the appellant had given him. In any event, the appellant's version was accepted as true for purposes of the appellee's successful motion for summary judgment.

 The record shows that Keaten voluntarily signed the application without any fraudulent or coercive influence by the agent after all the answers were filled in. Furthermore, the record shows that the appellant had adequate opportunity to read the application before he signed and no answers were changed thereafter.

3. The policy defined covered illnesses to include any sickness or disease that not only resulted in total disability but that was manifested *after* the policy was in force.

4. *Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

testable clause in a disability policy bars an insurer from denying coverage on a particular claim under other restrictive clauses in the policy by investigating the truthfulness of assertions stated in the application. *Second,* whether statements made in an application for disability insurance, allegedly false due to the actions of an insurance agent after full and truthful answers were purportedly given by the applicant, must be taken on their face value alone thereby estopping an insurer from refuting their truthfulness and denying coverage on a specific claim.

Although in evaluating Georgia law pertinent to these two issues we discovered precedent that could possibly be read both ways,[5] we find that the Georgia Supreme Court, if presented with this identical factual situation would have reached the same result as the district court below.[6] In reaching this conclusion, we are, in effect, sitting as a state court.[7]

Before discussing the incontestability issue, we must first recognize that, as noted in Appleman, Insurance Law and Practice (J. Appleman ed.) § 311, such:

> clauses are enforced with particularity by the courts because of the desirable purpose which they have. It is their purpose to put a checkmate upon litigation; to prevent, after the lapse of a certain period of time, an expensive resort to the courts—expensive both from the point of view of the litigants and that of the citizens of the state. In that way, *it is a statute of limitations upon the right* [of

the insurer] *to maintain* certain actions or certain defenses. . . . (footnotes omitted) (emphasis added).

We find that Georgia follows the majority view [8] as to which particular defenses are negated by an incontestable clause. In other words, after the period of incontestability has run, the insurer is only barred from contesting the validity of the policy itself, e. g., on grounds of fraud in the procurement, etc. . . . It still reserves the right to deny any claim if it is not within the coverage as stated under the policy's terms. *See Washington National Ins. Co. v. Burch,* 270 F.2d 300 (5th Cir. 1959) (appeal from S.D. Ga.); *Metropolitan Life Ins. Co. v. Shalloway,* 151 F.2d 548 (5th Cir. 1945) (appeal from N.D. Ga.); *United States v. Kaminsky,* 64 F.2d 735 (5th Cir. 1933) (appeal from S.D. Ga.); *Equitable Life Assur. Soc. v. Gillam,* 195 Ga. 797, 25 S.E.2d 686 (1943); *Ballinger v. C & S Bank of Tucker,* 139 Ga.App. 686, 229 S.E.2d 498 (1976); *Gulf Life Ins. Co. v. Lanier,* 114 Ga.App. 277, 151 S.E.2d 161 (1966); *Hollis v. Travelers' Ins. Co.,* 49 Ga.App. 274, 175 S.E. 33 (1934); Ga.Code Ann. §§ 56–2503(1)(b) & 56–2509. This is true regardless of the import of any statements made in the application for insurance.[9] To hold otherwise, would be to expand coverage thereby forcing liability upon the insurer for risks it never intended to assume. *See W.A. Showers v. Allstate Ins. Co.,* 136 Ga. App. 792, 793, 222 S.E.2d 198, 199 (1975).

---

**5.** As to the first issue, Keaten's position is arguably supported by *National Life & Accident Ins. Co. v. Chapman,* 106 Ga.App. 375, 127 S.E.2d 157 (1962) and *Penn Mut. Life Ins. Co. v. Childs,* 65 Ga.App. 468, 16 S.E.2d 103 (1941). Furthermore, *Reserve Life Ins. Co. v. Ayers,* 217 Ga. 206, 121 S.E.2d 649 (1961); *Stillson v. Prudential Ins. Co.,* 202 Ga. 79, 42 S.E.2d 121 (1947); *National Life & Accident Ins. Co. v. Goolsby,* 91 Ga.App. 361, 85 S.E.2d 611 (1955); *Barber v. All American Assur. Co. of Louisiana,* 89 Ga.App. 270, 79 S.E.2d 48 (1953) allegedly bolsters appellant's contentions as to the second issue.

**6.** It is, of course, impossible to determine whether *this case* signals the beginning of a new development in Georgia law, or whether

future Georgia courts will limit it or perhaps overrule it. As a federal court sitting with diversity jurisdiction, we must apply that Georgia law which *presently* bears [what we find to be] the overwhelming weight of authority. (emphasis added).

*Mitchell v. Young Refining Corp.,* 517 F.2d 1036, 1040 n.3 (5th Cir. 1975).

**7.** *Commissioner v. Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

**8.** Most jurisdictions follow this line of reasoning. 43 Am.Jur.2d Insurance §§ 1160 & 1170 (1969); Annot., 13 A.L.R.3d 1383, 1392 (1967).

**9.** *See infra* note 11, at 302.

Keaten's counsel on appeal submits that the cases and statutes supporting the aforementioned proposition of law are readily distinguishable because they differ in various factual matters such as the type of insurance policy involved, e. g., life, life with disability, property. This is a distinction without a difference in result. We believe that the Georgia legislature and judiciary fully intend to presently treat the question of incontestability the same regardless of the type of policy issued. Merely because the Georgia Supreme Court has not been faced with this question in a disability policy is irrelevant. The legislature has indicated that although incontestable clauses serve a worthwhile purpose by keeping policies in force, they were never meant to be used as a plenary grant to rewrite the terms of coverage and risks assumed by the insurer.[10]

"We find in the Georgia cases and statutes nothing which militates against ... [what] we find to be declaratory of the general law ... [that] to determine the coverage of a policy ... [is] not to contest the policy, but to apply it properly." *Washington National Ins. Co. v. Burch*, 270 F.2d 300, 304 (5th Cir. 1959) (appeal from S.D. Ga.). "For the Company to contest any of these facts is not to contest its policy, but admitting its validity, to require establish-

ment of the facts necessary to its proper application and fulfillment." *Metropolitan Life Ins. Co. v. Shalloway*, 151 F.2d 548, 551 (5th Cir. 1945) (appeal from N.D. Ga.). "[T]he validity of the policy ... [is all that] becomes incontestable, [while] the conditions of the insurance and the coverage ... [are] unaffected." *Id.* "The fact that the policy had become incontestable would not operate to change the rule, since, though incontestable, the liability, in the absence of any waiver, is measured by the terms and provisions of the policy itself." *Hollis v. Travelers Ins. Co.*, 49 Ga.App. 274, 275, 175 S.E. 33, 34 (1934). More recently, the Georgia Court of Appeals stated that an insurance company is not precluded from showing that a particular claim is "not covered within the terms and provisions of the policy because of restrictions and exclusions therein, although ... [it] would have been precluded from asserting as a defense the invalidity of the ... [policy] because of fraud in the procurement or any other ground affected the validity of the ... [policy] as a whole." *Ballinger v. C & S Bank of Tucker*, 139 Ga.App. 686, 689, 229 S.E.2d 498, 501 (1976).

Appellant also contends that *National Life & Accident Ins. Co. v. Chapman*, 106 Ga.App. 375, 127 S.E.2d 157 (1962) (disability policy)[11] and *Penn Mut. Life Ins. Co. v.*

---

**10.** Ga.Code Ann. § 56–2509 reads as follows:

A clause in any policy of life insurance providing that such policy shall be incontestable after a specified period *shall preclude only a contest of the validity of the policy, and shall not preclude the assertion at any time of defenses based upon provisions in the policy which exclude or restrict coverage*, whether or not such restrictions or exclusions are excepted in such clause. (emphasis added).

Ga.Code Ann. § 56–2503(1)(b) reads, in pertinent part, as follows:

(1) No policy of life insurance ... shall be delivered or issued for delivery in this State unless it contains in substance the following provisions: (b) Incontestability. A provision that the policy (*exclusive of provisions relating to disability benefits* or to additional benefits in the event of death by accident or accidental means) shall be incontestable, except for nonpayment of premiums, after it has been in force during the life time of the

insured for a period of two years from its date of issue. (emphasis added).

**11.** *Chapman* reversed a directed verdict for the insured in an action to recover disability benefits from the insurer. In so holding, the court reasoned that it was error for the trial court to have sustained the insured's general demurrer to the insurer's answer that had contended that the claimed disability pre-existed the policy's effective date and thus was not within the risks insured against in the policy sued upon. The trial court had found that the incontestable clause had barred such a defense. Consequently, it sustained the general demurrer and the verdict was directed for the insured.

The Georgia Court of Appeals reversed this decision concluding that the incontestable clause did not bar the insurer from questioning whether a hazard was within the risks covered by the policy. Moreover, the court noted that such a clause merely estopped the insurance company from contesting the validity of the policy itself except as to the non-payment of

*Childs,* 65 Ga.App. 468, 16 S.E.2d 103 (1941) (life with disability policy) [12] fully support his position on this issue. We find this not to be the case. Consequently, *Chapman* and *Childs* have no precedential value on this particular appeal. Pursuant to our analysis set forth above, we affirm the district court's findings of law as to the incontestability issue.[13]

 Turning now to the second question before this court, we find that once again the appellant's contentions do not merit reversal of the district court's determinations. Georgia requires all applicants for insurance to read the application and know its contents before signing. This permits the truthfulness of the answers to be ascertained and any errors may then be easily corrected. If the applicant does not read the application, he is still charged with knowledge of its contents. *Prudential Ins.*

*Co. of America v. Perry,* 121 Ga.App. 618, 174 S.E.2d 570 (1970). *See generally Parris & Son, Inc. v. Campbell,* 128 Ga.App. 165, 196 S.E.2d 334 (1973). Keaten admittedly signed the application without reading it.[14] If he had read the application he would have noticed the limitation on the agent's power "to waive the answer to any question, to pass on insurability, to waive any of the Company's rights or requirements or to make or alter any contract." Since appellant was charged with knowledge of this limitation, he relied at his own peril on actions [15] of the agent in excess of that agent's power. *Prudential Ins. Co. of America v. Perry,* 121 Ga.App. 618, 174 S.E.2d 570 (1970). *See Jefferson Stand. Life Ins. Co. v. Bridges,* 147 Ga.App. 5, 248 S.E.2d 5 (1978); *Mutual of Omaha Ins. Co. v. Truluck,* 129 Ga.App. 692, 200 S.E.2d 913

premiums. This rationale merely tracks the general rule analyzed throughout our opinion.

Appellant relies on language that appeared after the court had already reversed and stated its reasons for so doing. This dicta was nothing but advisory as it was not relevant to the issue before the court. All the appellate court had notice of was that the insurer had proposed to defend on the ground that a pre-existing disease caused the claimed disability and thus was not covered under the policy's terms. The court had no indication of the particular disease referred to. Therefore, it applied the general rule and reversed. However, it then went on to give some *advice* to the trial court. It is this very *dicta* that Keaten submits is the controlling law in Georgia. The *Chapman* court's advice indeed did state that an insurer would be estopped from defending on the basis of non-coverage if the alleged pre-existing disease was one listed upon the application and denied to have ever existed. Nonetheless, we find this *dicta from an intermediary court of appeal to not be representative of the general rule still followed by the State of Georgia.*

12. The court in *Childs* found that "the incontestable clauses do not relate alone to the question of initial voidability of the contracts, but extend forward in force over the span of the contracts barring contests save only as exceptions have been preserved." *Penn Mut. Life Ins. Co. v. Childs,* 65 Ga.App. 468, 474, 16 S.E.2d 103, 108 (1941). The incontestable provision in *Childs* expressly excepted from its purview the non-payment of premiums and all provisions relating to disability benefits.

Not only was *Childs* rendered by an intermediate appellate court but it followed the minori-

ty rule, which is not the prevalent law in Georgia, as to the applicability of incontestable clauses. Therefore, we conclude that *Childs* is not material on this appeal and the result under the aforementioned general rule is still mandated.

13. Although this policy's statutory incontestable clause, *supra* note 1, at 300, has never been construed by any Georgia court, the district court below noted that an indistinguishable statutory provision in a very similar case was construed by this court in *Massachusetts Casualty Ins. Co. v. Forman,* 516 F.2d 425 (5th Cir. 1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). In the *Forman* decision, this court found the majority rule was applicable. Even though under the *Erie* doctrine this case has no precedential value on this appeal because it construed a Florida statute under Florida law, it does give us some insight as to how the majority rule affects the construction of the Georgia statute in question since both Florida and Georgia follow the general rule and have almost identical statutes. *See also Allen v. Aetna Life Ins. Co.,* 563 F.2d 1240 (5th Cir. 1977). Taking cognizance of these facts, we find that the Georgia courts would construe the instant statutory incontestability provision just as the district court below has done.

14. Therefore, Keaten violated his duty to read the application and correct any misstatements before it was sent to the insurer.

15. *See supra* note 2, at 300.

(1973); *Reserve Life Ins. Co. v. Bearden*, 96 Ga.App. 549, 101 S.E.2d 120 (1957), *aff'd* 213 Ga. 904, 102 S.E.2d 494 (1958).

Finally, we note that "[t]he doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, or its agent, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom. . . ." *Ballinger v. C & S Bank of Tucker*, 139 Ga.App. 686, 689, 229 S.E.2d 498, 501 (1976). *See Cobb Bank & Trust Co. v. Am. Mfrs. Mut. Ins. Co.*, 459 F.Supp. 328 (N.D.Ga.1978), *aff'd*, 624 F.2d 722 (5th Cir. 1980); *McGhee v. Independent Life & Acc. Ins. Co.*, 146 Ga.App. 310, 246 S.E.2d 349 (1978); *Parris & Son, Inc. v. Campbell*, 128 Ga.App. 165, 196 S.E.2d 334 (1973); *Lovett v. American Family Life Ins. Co.*, 107 Ga.App. 603, 131 S.E.2d 70 (1963). Consequently, the district court was correct in finding that the insurer in the case at bar was not estopped from refuting the truthfulness of statements made in the application and thereby denying coverage for a claim expressly excluded in the policy.

We find that the district court properly applied Georgia law to the facts as stipulated and acted prudently in granting appellee's motion for summary judgment. Therefore, we affirm.

AFFIRMED.

RONEY, Circuit Judge, concurring:

I concur in affirming the district court's judgment largely for the reasons stated in the district court opinion, as well as for those set forth in Judge Gewin's opinion.

Plaintiff's policy provides benefits for disability resulting from a sickness which first manifests itself while the policy is in force. Plaintiff's heart condition first manifested itself before policy coverage commenced, but resulted in a disability within two years of the policy's issuance.

Since Georgia law is similar to Florida law in these matters, this Court's decision in *Massachusetts Casualty Insurance Co. v. Forman*, 516 F.2d 425 (5th Cir. 1975), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976), is persuasive. Plaintiff's argument, similar to that in *Forman*, is that since the application did not reveal a prior manifestation of heart disease, the incontestability clause prevents the insurer from asserting that the heart disease did in fact first manifest itself prior to the date of the policy, and is therefore not covered by the policy. The incontestability clause, however, does not take effect until two years after the policy is issued. Plaintiff's disability began within the two-year period, therefore the incontestability clause does not apply, even though the disability continued for more than two years after the date of the policy.

Under part (a) of the incontestability clause, after two years the policy cannot be attacked because of misstatements in the application. This part does not apply because the insurer does not attack the validity of the policy. Part (a) does not govern whether the application's statements must be taken as true or false; it just says that after two years it makes no difference.

Under part (b), disability occurring more than two years after the issuance of the policy is covered even though it results from a pre-existing disease, if the disease did not first manifest itself prior to the policy date. Part (b) does not apply in this case because the disability resulting from a pre-existing condition began within two years of the date of the policy. In any event, the disease manifested itself before the policy date.

Without the application of the incontestability provision, plaintiff has no case at all. By the policy's language, plaintiff cannot receive benefits for a disabling sickness if the sickness has manifested itself before the policy was issued. The incontestability clause could in no way expand that coverage. The district court properly granted the insurer's motion for summary judgment.