680 A.2d 584

**INSURANCE COMMISSIONER OF
the STATE OF MARYLAND**

v.

**The MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK.**

**No. 1566, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

June 28, 1996.

Reconsideration Denied Aug. 29, 1996.

Christina Gerstung Beusch, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellant.

Barrett W. Freedlander (Weinberg & Green L.L.C., on the brief), Baltimore, for Appellee.

Argued before WENNER, DAVIS and HARRELL, JJ.

HARRELL, Judge.

This appeal requires us to determine if we shall recognize an "exist/manifest" distinction when interpreting the phrase "existed prior to", in a statutorily required incontestability clause contained in a disability insurance policy. The statute prohibits an insurer from turning down any claim for disability (as defined in the policy), starting after two years from the policy's inception, on the grounds that a disease or physical condition existed prior to the policy's inception. The provisions of the policy at issue here define "disability" in terms of the insured having a sickness or disease that first manifests itself while the policy is in force. Appellee (cross-appellant), the Mutual Life Insurance Company of New York ("MONY"), filed a cross-appeal challenging the Circuit Court for Baltimore City's affirmance of appellant's (cross-appellee), the Insurance Commissioner of the State of Maryland ("the Commissioner"), interpretation of Md. Ann.Code art. 48A § 441

(1957, 1994 Repl.Vol.)[1] in a manner that refused to recognize an "exist/manifest" distinction. The Commissioner appeals from the portion of the circuit court's judgment that, based in part upon its finding that MONY did not violate the insurance code in maintaining its erroneous interpretation of the statute, reversed the Commissioner's order requiring MONY to pay its insured all benefits due under her disability insurance policy. As we shall explain, we conclude that the circuit court's interpretation of § 441, which did not recognize an "exist/manifest" distinction, was legally correct. Therefore, we shall affirm this portion of the lower court's judgment. As to MONY's obligation to pay benefits to its insured consonant with its statutory and contractual obligation, having interpreted § 441 against MONY's position, we conclude that by virtue of a stipulation entered below by MONY and the Maryland Insurance Administration ("MIA"), MONY cannot now refuse the claim of its insured/Mary L. Holland, on the ground that her condition manifested itself before the issuance of her policy. Because that was the only apparent ground revealed by the record in this case upon which MONY denied the claim, it must now pay Ms. Holland's claim in accordance with the terms of her policy.

## ISSUES

MONY, as cross-appellant, raises the following issues, which have been rephrased:

I. Assuming that MONY was in full compliance with Article 48A, did the circuit court err in choosing to decide the merits of the underlying contractual issue?

II. Did the circuit court err in disagreeing with MONY's interpretation of the policy definitions at issue as they relate to the incontestability clause?

The Commissioner raises the following questions for our consideration, which we have slightly rephrased:

---

1. Unless otherwise specified, all statutory references are to Md. Ann. Code art. 48A (1957, 1994 Repl.Vol.).

III. Did the Commissioner have the authority to order MONY to pay its insured's disability claim, where MONY denied the claim based on an erroneous interpretation of § 441?

IV. Assuming it is finally determined that MONY's interpretation and application of § 441 to its insured's claim was contrary to Maryland law, is MONY obligated to pay this claim pursuant to the stipulation agreed upon by the parties?

## *FACTS*

The facts before us are essentially undisputed and are for the most part contained in a stipulation that was agreed upon by the MIA and MONY before the Commissioner for the express purpose of attaining a formal interpretation of § 441.[2] On 27 November 1985, Ms. Holland (or "the insured") executed an application for a disability income insurance policy to be issued by MONY. In this application, Ms. Holland denied, among other illnesses, any previous history of mental or nervous disorder during the past ten years. She did indicate that she had been treated for an ulcer. Based on this application, MONY issued Ms. Holland a disability income insurance policy. MONY expressly agreed not to contest the accuracy of the answers provided in Ms. Holland's application.

Ms. Holland's policy, by its terms, generally covered disabilities that "start[ed] while th[e] Policy ... [was] in force." "Disability" was defined as "either a Total Disability or a Partial Disability, provided that in either case the Disability starts while this Policy is in force." Both total and partial disability were defined in terms of the insured not being able to work "because of injury[3] or sickness." "Sickness" was defined as a "sickness or disease which first manifests itself

---

**2.** As noted, *infra,* the parties agreed that the stipulation would be used in "any appeal by either Party arising therefrom."

**3.** Injury was defined as an "accidental bodily injury sustained while this Policy [is] in force."

while this Policy is in force." In conformance with § 441,[4] the policy also contained the following provisions, under the heading "Incontestable":

> After this policy has been in force for 2 years during your lifetime, we may not contest any statements in the application. (We will not count as part of the 2 years any period when you are disabled.)[5]

\* \* \* \* \* \*

We may not reduce or turn down any claim for loss incurred [or] Disability [as defined in the policy] starting after two years from the Policy Date on the grounds that a disease or

---

**4.** Section 441 provides:

There shall be a provision as follows:

"Time limits on certain defenses: (1) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period."

(The foregoing policy provision shall not be so construed as to affect any legal requirement for avoidance of a policy or denial of a claim during such initial two-year period, nor to limit the application of §§ 453 through 457 of this subtitle in the event of misstatement with respect to age or occupation or other insurance.)

(A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium (1) until at least age fifty (50) or, (2) in the case of a policy issued after age forty-four (44), for at least five (5) years from its date of issue, may contain in lieu of the foregoing the following provision (from which the clause in parenthesis may be omitted at the insurer's option) under the caption "Incontestable".

"After this policy has been in force for a period of two years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.")

(2) "No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy."

**5.** In choosing this language, MONY opted for the second option contained in § 441(1), which does not include the exception language for fraudulent misstatements.

physical condition existed prior to the Policy Date, unless that disease or physical condition is excluded from coverage by name or specific condition.

The policy also included a rider that expressly excluded loss for gastro-intestinal disease. It is undisputed that the form and content of Ms. Holland's policy were filed with the MIA, where the policy received approval prior to MONY's use of it in Maryland.

Almost four years after the issuance of this policy, on 6 June 1989, Ms. Holland filed a claim for disability resulting from a condition diagnosed as acute and chronic anxiety with panic attacks.[6] The parties have stipulated that "Ms. Holland's claim for a loss incurred or disability commenced after two years" from the policy's inception. The parties have agreed further that the policy did not contain a rider excluding this disease or physical condition from coverage by name or specific description. On 1 October 1991, MONY denied Ms. Holland's claim[7] on the ground that her condition first manifested itself prior to the effective date of her policy and thereby did not meet the policy's definition of sickness.[8] The

---

6. We note that although the parties agreed in their stipulation that Ms. Holland filed her claim on 6 June 1989, the notice and order issued by the MIA indicates that the claim was filed on 5 April 1989.

7. The parties have stipulated that "[t]he delay between the time the claim was made and the time MONY issued its denial arose because of a dispute between the insurer and the insured regarding the sufficiency of the medical records that were made available to MONY to review the claim." The MIA determined that MONY's request for records, which was apparently based on its desire to ensure strict adherence to the terms of its contract, was appropriate.

8. In a letter to Ms. Holland dated 18 October 1991, MONY explained:
[T]he provision in your policy stating that, after two years we would not turn down a claim on a *pre-existing* basis unless such condition is specifically excluded from coverage, does not apply to your situation. A *pre-existing* condition would be one such as a congenital condition, which an individual could have without ever being aware of or, ever have experienced symptoms of.
(Emphasis in original).

parties have stipulated that the sickness which caused Ms. Holland's disability, in fact, manifested itself prior to the effective date of the policy.[9] In denying Ms. Holland's claim, MONY relied in part upon *Massachusetts Casualty Ins. Co. v. Forman,* 516 F.2d 425 (5th Cir.1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976), in which a similarly worded incontestability clause and definition of sickness were at issue. There, an insurer filed suit in part for the return of benefits paid pursuant to a disability insurance policy, on the ground that the insured had a pre-manifested, but undisclosed, condition of diabetes. The Fifth Circuit, finding for the insurer, held:

> [Where] the condition for which [the insured] claimed benefits had 'first manifested' itself almost a year before the policy became effective ... [the] disability ... was never within the scope of coverage, and [the insured] cannot now [relying on the incontestability clause] claim ... disability benefits [because] ... the incontestability provisions of the policy [do not cause] ... this prior existing illness to be covered.

*Id.* at 428. MONY's reliance was based further on other cases that also interpreted incontestability clauses containing language similar to § 441 in a manner such that the clause did "not cut off defenses to coverage, and that a condition that actually manifests itself prior to the issuance of coverage falls outside of the policy's coverage because of the policy's definition of 'sickness.' "

Ms. Holland apparently filed a complaint with the MIA, where her claim was investigated. On 14 December 1993, the MIA issued a notice and order, stating:

---

**9.** This stipulation was apparently based on information provided by: (1) Dr. Marshall Levine that Ms. Holland "experienced clear and distinct symptoms of anxiety attacks as early as 16 July 1985;" and (2) Dr. Alan Jonas that Ms. Holland "during a July 29, 1986 consultation, ... acknowledged experiencing symptoms of anxiety attacks on and off for the past one or two years."

1. MONY [is ordered to] refrain from denying Ms. Holland's claim on the ground that the disease or physical condition of Acute and Chronic Anxiety with Panic Attacks may have manifested or did manifest itself prior to the effective date of the Policy; and

2. MONY [is ordered to] pay the claim of Ms. Holland that is the subject of this Notice and Order.

In support, the MIA reasoned that the plain meaning of § 441, which prohibited MONY from denying a disability claim commencing two years after the date of the issuance of the policy, on the ground that a disease or physical condition, not excluded from coverage by name or specific description, existed prior to the policy's effective date, "include[d] both those [pre-existing diseases and conditions] . . . which have and have not manifested themselves." Accordingly, the MIA reasoned that MONY's denial of Ms. Holland's claim on the ground that her condition first manifested itself prior to the effective date of the policy was in violation of § 441. The MIA found further that MONY's denial of Ms. Holland's claim was "in contravention of State law . . . [and] prohibited by Md.Code Ann. Art. 48A, §§ 55(2)(i) and (iv),[10] and 230A(c)(2)[.11]"

MONY appealed the MIA's order to the Maryland Insurance Commissioner where, in lieu of an evidentiary hearing, the parties agreed to a stipulation of facts for the purpose of the hearing before the Commissioner and any further "appeal

---

**10.** Sections 55(2)(i) and (iv), which are enforcement sections of the insurance code, respectively provide:

> The Commissioner may refuse to issue or after a hearing refuse to renew, or may revoke or suspend an insurer's certificate of authority . . . if the insurer:
>
> (i) Violates any provision of this article other than those as to which refusal, suspension, or revocation is mandatory;
>
> \* \* \* \* \* \*
>
> (iv) Without just cause unreasonably refuses or delays payment to claimants of the amount due to them.

**11.** Section 230A(c)(2) provides that "[r]efusing to pay a claim for an arbitrary or capricious reason based on all available information" amounts to an unfair claim settlement practice in violation of this section.

by either Party arising therefrom." In addition to stating the facts that we have set forth,[12] this stipulation indicated that the parties "desire[d] a statutory interpretation of MD. ANN. CODE art. 48A, § 441." [13] The stipulation provided further:

[It] does not bind Mary L. Holland ... nor does it prejudice her right to pursue a claim in any court of competent jurisdiction or to file future complaints with the Maryland Insurance Administration. Should [Ms. Holland] proceed with a claim, MONY similarly is not bound by this Stipulation.

\* \* \* \* \* \*

The Maryland Insurance Administration, formerly the Insurance Division of the Department of Licensing and Regulation, has historically interpreted MD. ANN. CODE, art. 48A, § 441 to prohibit an insurance company from denying or reducing a claim after two years from the effective date of the policy because the sickness causing the loss or claim manifested itself prior to the effective date of the policy.

Written guidelines issued by the MIA, entitled 'Underwriting of Health Insurance Policies', which were effective as of

---

**12.** Most of the facts that we have described to this point were contained in the stipulation.

**13.** MONY now disputes the purpose of the stipulation, arguing that its "intent with respect to this Stipulation was to obtain a determination of whether reasonable disagreement between the Commissioner and itself over the interpretation of the policy, standing alone, can be deemed to constitute a violation of the Insurance Code by MONY." As we shall explain more fully, *infra,* we believe that the stipulation rather clearly provides that it was made for the purpose of attaining a formal interpretation of § 441, and that if this interpretation was against MONY's position, MONY could not deny Ms. Holland's claim on the ground that her disability manifested itself before the policy was in force. Moreover, because this was the only ground that MONY relied upon in denying the claim, an interpretation of § 441, contrary to MONY's position, would compel MONY to pay the claim in accordance with the terms of the policy, subject only to possible further discretionary review on the limited issue concerning the correct interpretation of § 441.

August 1, 1970, ("Guidelines") and are published in the National Insurance Law Service, are attached as Exhibit G. Additionally, stipulation no. 25 provided:

> In the event the Insurance Commissioner affirms the December 14, 1993, Notice and Order, MONY agrees not to deny payment for the claim at issue on the ground that the Insured's condition of Acute and Chronic Anxiety with Panic Attacks first manifested itself prior to the effective date of the Policy, and, the MIA agrees not to hold that MONY's initial declination was a § 230A(c)(2) violation. This agreement, however, will in no way impede either Party's right to an appeal nor MONY's right to request a Stay from the court on the disability payments pending the outcome of the appeal.

On 19 July 1994, the Commissioner issued a memorandum and order finding that, although MONY did include in its policy an incontestability clause in accordance with § 441, it "violated Art. 48A, §§ 55(2)(i) and 55(2)(iv) ... when it denied Mary Holland's claim for disability benefits [based on a pre-existing condition] in contravention of Art. 48A, § 441," [14] and, accordingly, ordering MONY to "pay Ms. Holland all benefits due under her policy [as restitution pursuant to § 55A,[15] in lieu of revocation of suspension, for any violation of the Code]." In reaching its decision, the Commissioner initially rejected MONY's attempt to refuse benefits based on the fact that Ms. Holland's underlying disease manifested itself prior to the issuance of her policy. In support, the Commissioner explained in part:

---

14. The Commissioner noted that "[i]n exchange for ... [the stipulation], the Maryland Insurance Administration agreed not to pursue the claim that MONY acted in an arbitrary and capricious fashion in violation of ... § 230A(c)(2)."

15. Section 55A provides:
> In lieu of or in addition to revocation or suspension of an insurer's certificate of authority the Commissioner may ... (2) require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation.

The whole purpose of ... [§ 441] ... is to achieve certainty as to the coverage provided and to avoid litigation. The company is free to seek medical information before issuing the policy and can exclude specific illnesses. The company may also conduct a further investigation if it deems appropriate. However, under Art. 48A, § 441, once the policy has been issued, the [insurance] company may not, in the absence of fraud, go back and deny coverage for pre-existing conditions. Otherwise, § 441 would be meaningless.

MONY seeks to avoid this common sense result by defining disability as including only a sickness or disease which 'manifests itself' after the policy was issued. According to this argument, an insurer could define disability or illness to exclude any pre-existing condition of any type, irrespective of how long ago the condition started. I find this argument to be contrary to both the language and purpose of the statute, and, I therefore, reject this argument.

The language of the statute provides simply and directly that 'No claim ... for disability commencing after two years from the date ... of this policy shall be denied on the ground that a disease or physical condition ... had existed prior to the ... date of this policy.' Clearly, a disease or condition exists whether it manifests itself or not. The distinction MONY makes between pre-existing conditions which are not manifest and those which are, simply is not a distinction which is found in the statute.

Moreover, MONY's attempt to exclude an illness which 'manifested itself' prior to the policy date runs directly counter to the purpose of incontestability clauses.

As to stipulation no. 25, the Commissioner noted in a footnote that MONY agreed to pay Ms. Holland's claim if it was

determined that the claim was legitimate.... In exchange for this agreement, the Maryland Insurance Administration agreed not to pursue the claim that MONY acted in an arbitrary and capricious fashion in violation of ... § 230A(c)(2). In light of these agreements, it is difficult to

understand why MONY now argues that the denial of benefits was not arbitrary and capricious. Pursuant to the stipulation, I will not resolve this issue and will instead assume MONY will honor the claim as agreed in ¶ 25 of the stipulation.

MONY appealed the Commissioner's decision to the circuit court, where the Commissioner's interpretation of § 441 was affirmed. The circuit court also rejected MONY's attempt to distinguish between pre-existing conditions that have and have not manifested themselves when determining the applicability of an incontestability clause, noting in its 27 June 1995 Memorandum Opinion and Order:

It is apparent that the terms of the disability insurance policy, absent the incontestability clause, would eliminate coverage for a disease that manifests itself prior to the effective date of the policy. It is the inability to disregard the incontestability clause that clouds that result. As urged by MONY, a disease can exist whether or not it manifests itself. MONY wishes this court further to conclude that the term 'existed prior,' as used in the policy, refers only to those diseases or physical conditions that, although in existence, did not manifest themselves. The MIA, in contrast, asserts that such an exist-manifest distinction would nullify the intent of the incontestability clause.

After indicating that the cases from other jurisdictions addressing this question have resulted in "antithetical responses," the circuit court considered some of these cases, the terms of § 441, the MIA's historical interpretation of § 441, and ultimately concluded that MONY's position, if adopted, would

effectively expand the ability of the insurer *to* bar insureds from benefits well after the incontestability clause has taken effect. Well after the contestability period, insurers would be able to search any and all records regarding an insured's appointments with physicians for some hint of a manifestation prior to the effective date of the policy. The time

limitations of the incontestability clause would be rendered inoperative.

(Emphasis in original). The circuit court, however, reversed that portion of the Commissioner's decision that ordered MONY to pay to Ms. Holland disability benefits, finding that because there were "no technical violations of the Insurance Code by MONY,"[16] the penalty provisions of § 55A were inapplicable. As to § 441, the circuit court concluded that there was no violation because "MONY merely sought a different interpretation of that statute ... [and] MONY's policy was filed with the MIA and received approval as to the form from the MIA prior to MONY's use of the policy in Maryland." Turning to §§ 55(2)(i) and (iv) the circuit court found that these sections were also not violated, stating:

MONY's interpretation of Section 441 was not unreasonable considering the support its position has received in sister states. Thus, Section 55(2)(iv) has not been violated. Further, since Sections 441 and 55(2)(iv) have not been contravened, there is no violation of Section 55(2)(i) as well.

The circuit court then effectively determined that MONY did not have to pay Ms. Holland's claim by virtue of stipulation no. 25, stating:

This stipulation is an example of poor drafting. By its terms it states that MONY could not deny the insured her disability benefits based on an argument of the disability first manifesting itself prior to the effective date of the policy should the Commissioner affirm the decision of the Associate Commissioner. As is evident, the earlier decision was indeed affirmed by the Commissioner. However, the stipulation further read that neither party's right to an appeal nor MONY's right to request a Stay from the court on the disability payments pending the outcome of the appeal would be hindered. If the stipulation had ended with the first sentence, MONY would be required to pay on

---

16. The Commissioner had determined that MONY violated §§ 441, 55(2)(i) and (iv) and thereby effectively ordered restitution under § 55A(2).

the claim due to the fact that its main point of contention would no longer be viable. However, the stipulation muddled that result.

The second sentence of stipulation # 25 ... allows either party the right to appeal the decision of the Commissioner to the court as well as MONY's right to request a stay from the court on the disability payments pending the outcome of the appeal. Furthermore, both parties are entitled through this stipulation to appeal this court's decision.

The circuit court reached its conclusion in spite of its earlier observation, in a footnote, that:

by virtue of Stipulation # 25, it appears that, if MONY is ultimately unsuccessful in its appeal, the language of the stipulation would require it to pay the disability benefits to the insured.

### STANDARD OF REVIEW

Before reaching the merits of this appeal, we note briefly the standard of review that we shall apply. On appeal from the Commissioner, a reviewing court may reverse or modify the agency's decision under the following circumstances:

[I]f the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(i) In violation of constitutional provisions; or

(ii) In excess of the statutory authority or jurisdiction of the Commissioner; or

(iii) Made upon unlawful procedure;

(iv) Affected by other error of law;

(v) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted;

(vi) Arbitrary or capricious.

§ 40(4), (6). Because the parties have stipulated to the facts, our review will be limited to matters of law.

## DISCUSSION

### I.

■ Logic dictates that our review begin with MONY's threshold issue concerning our ability to decide the central issue in the case relating to the proper interpretation of § 441. MONY argues, without reference to any authority whatsoever, that because "the Insurance Commissioner had no jurisdiction to interpret MONY's insurance policy, no court (including this one) on appeal from the Commissioner's ruling has the jurisdiction to interpret the policy." MONY states further that our review is "narrowly restricted to those issues that were properly before the administrative agency." In light of the parties' express agreement in their stipulation before the Commissioner, which by its terms was made binding on the parties in any petition for judicial review of the Commissioner's decision, that they "desire[d] a statutory interpretation of ... § 441," we do not see how MONY can now argue that the correct statutory interpretation of § 441 is not properly before this Court.[17] We therefore reject MONY's attempt to question our ability to reach the merits of this appeal.

### II.

■ Next, we must conduct an analysis of the proper interpretation of § 441(2), which requires health insurance policies issued in this State, including disability policies, to contain the portion of the incontestability clause that prevents an insurer from denying a claim for disability, as defined in the policy, commencing two years after the policy's effective date, on the ground that the disease or condition causing the disability existed prior to the issuance of the policy. Under the undisputed facts of this case, there is no doubt that, but for MONY's inclusion of this mandatory part of the incontestability provision, it could have denied Ms. Holland's claim based on the scope of the policy's coverage, which was limited

---

17. Moreover, without deciding whether such an argument has any legal merit, we find that MONY waived it by expressly requesting the Commissioner to interpret § 441.

to a sickness first manifesting itself while the policy was in force. The circuit court correctly noted, however, that the incontestability clause "clouds that result," and it ultimately agreed with the Commissioner's finding that § 441 prohibited MONY from denying a disability claim that commenced after the expiration of the contestability period based on a pre-existing condition, regardless of whether the condition manifested itself prior to the effective date of the policy. MONY now strenuously argues, as it did below, that under the circumstances of this case, in which the policy coverage was expressly limited to covering disabilities that first manifested themselves while the policy was in force, we should adopt the position taken by a majority of other states and federal venues that recognizes an "exist/manifest" distinction when applying an incontestability clause so that it is allowed to limit coverage in a manner that excludes pre-manifested conditions. MONY states:

> [Its] position was, and is, that the definition of 'sickness,' which requires that in order to be covered a condition must first manifest itself while the policy is in force, is a reasonable and appropriate definition relating to 'disability,' a definition that is consistent with Section 441(2), namely, that, after two years, a sickness that exists but did not manifest prior to the effective date of the policy is covered, but that a premanifest condition is not.

In support of its position, MONY relies on the language of § 441 that permits it to define "disability" in terms of when a sickness first manifests itself, cases from other jurisdictions holding that incontestability clauses do not prevent an insurer from defending on the ground that the particular disability was not within policy coverage, as well as the MIA Guidelines.[18] As we shall explain, *infra*, particularly under the circumstances of this case, in which MONY has stipulated that the MIA has historically interpreted § 441 against MONY's position, we decline MONY's invitation to recognize such a distinction, and hold that MONY's incontestability clause pre-

---

**18.** These MIA Guidelines are discussed more fully in footnote 34, *infra*.

vented it, after the contestability period had expired, from denying Ms. Holland's claim for her disability, which commenced after two years from the policy's inception, on the ground that her condition first manifested itself prior to the issuance of her policy.

We will begin our discussion by briefly exploring the history and purpose of incontestability clauses.[19] These clauses are typically composed of provisions that act to limit "the amount of time in which an insurer can contest the policy[,] . . . [a]ct[ing] as a statute of limitations upon the grounds of contest to which it is applicable." Annotation, *Construction of Incontestable Clause Applicable to Disability Insurance*, 13 A.L.R.3d 1383, 1384 (1967). In *Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995 (S.D.Ind.1989), the United States District Court for the Southern District of Indiana undertook a thorough analysis concerning the purpose of incontestability clauses, explaining:

> These clauses are now required by statute in most states[20] because without them, insurers were apt to deny benefits on the grounds of a pre-existing condition years after a policy had been issued. This left beneficiaries . . . in the untenable position of having to do battle with powerful insurance carriers. *See* 7 *Williston on Contracts* § 912.394 (3d ed.1963) (noting that these clauses came from the 'early greed and ruthlessness of the insurers' who 'too often . . . resisted liability stubbornly on the basis of some misstatement made by the insured at the time of applying for the policy').

* * * * * *

---

**19.** For an in-depth analysis of the historical development of the incontestability clause *see* Eric K. Fosaaen, *AIDS and the Incontestability Clause*, 66 N.D. L.Rev. 267, 268–84 (1990).

**20.** "[A]pproximately 47 states have enacted legislation requiring life, disability, and health insurance policies to contain incontestability clauses as tools to promote certainty and reduce litigation." *Oglesby v. Penn Mutual Life Ins. Co.*, 889 F.Supp. 770, 774 (D.Del.1995) (citations omitted).

> [S]uch clauses are designed to 'require the insurer to investigate and act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured.' G. Couch, 18 *Couch on Insurance* § 72:2 at 283 (1983). 'It prevents an insurer from lulling the insured, by inaction, into fancied security during the time when the facts could be best ascertained and proved, only to litigate them belatedly, possibly after the death of the insured.' *Id.* at 283–84.

725 F.Supp. at 1000. On a similar note, the New York intermediate appellate court has explained:

> The legislative intent behind this clause is to safeguard an insured from excessive litigation many years after a policy has already been in force and to assure him security in financial planning for his family, while providing an insurer a reasonable opportunity to investigate. The statutory scheme gives the insurer two years to conduct an investigation of facts relevant to determining its risks; having failed to investigate, the insurer cannot be heard to complain now. After two years the insurer may not litigate what illnesses are or are not covered by the policy, because the purpose of the incontestability provision is to put an end to such litigation.

*White v. Massachusetts Cas. Ins. Co.*, 96 A.D.2d 732, 465 N.Y.S.2d 345, 346 (N.Y.App.Div.1983). The Seventh Circuit has recognized:

> The incontestability clause is ... 'in the nature of a statute of limitation and repose,' ... obliging the insurer to investigate the insured's medical history promptly else it become bound by representations contained in the insured's application.
>
> \* \* \* \* \* \*
>
> Incontestability clauses do not, of course, preclude insurers from expressly precluding coverage for losses arising from particular causes.

*Equitable Life Assurance Soc'y of the United States v. Bell,* 27 F.3d 1274, 1278–79 (7th Cir.1994) (citations omitted). Our

Court of Appeals has likewise recognized that "the purpose of incontestability provisions is 'to put a checkmate upon litigation; to prevent, after the lapse of a certain period of time, an expensive resort to the courts—expensive both from the point of view of the litigants and that of the citizens of the state.'" *Equitable Life Assurance Soc'y of the United States v. Jalowsky*, 306 Md. 257, 262–63, 508 A.2d 137 (1986) (citing 1A J. Appleman, *Insurance Law and Practice* § 311, at 311 (rev. 1981), and *Suskind v. North American Life & Cas. Co.*, 607 F.2d 76 (3d Cir.1979)). *See also Beard v. American Agency Life Ins. Co.*, 314 Md. 235, 263, 550 A.2d 677 (1988) (concluding that "the incontestability statute serves the substantial public interest in protecting claimants from the possibility of expensive litigation").

 Apparently mindful of these considerations, the Maryland incontestability clause statute, entitled "Time limit on certain defenses; incontestability," consists of two mandatory clauses. The first part restricts an insurer's ability to contest statements in an application for insurance two years after the policy has been issued.[21] § 441(1). Under the statute's second provision, which is at issue in this case, an insurance company is prevented from denying a claim for disability, as defined in the policy, commencing two years after the policy's effective date, on the ground that the disease or condition causing the disability existed prior to the issuance of the policy.[22] § 441(2).

---

**21.** It is noteworthy that prior to expiration of the two year contestability time period, the insurer remains free to challenge the accuracy of the insured's statements in his or her application.

**22.** During the two years preceding the commencement of the insured's disability, the insurer retains the right "to deny a claim on the ground that the underlying disease or condition existed before the issue date of the policy." *Bell*, 27 F.3d at 1279 n. 7 (citing *Keaten v. Paul Revere Life Ins. Co.*, 648 F.2d 299, 304 (5th Cir. Unit B 1981) (Roney, J., concurring)). Accordingly, if a disability starts prior to the end of the insured's two year contestability period, but the insured either conceals the condition or waits until two years have passed before filing a claim for disability, the insurer may deny liability. *Oglesby v. Penn Mutual Life Ins. Co.*, 889 F.Supp. 770, 778 (D.Del.1995).

Although there are no reported Maryland cases addressing the merits of MONY's attempt to exclude pre-manifesting diseases and conditions from coverage, courts from other jurisdictions have faced this issue, resolving it inconsistently. Because these foreign cases provide insight into the merits of MONY's position, we will review some of them.

On the one hand, we are mindful that many cases have, in essence, recognized an "exist/manifest" distinction when interpreting similarly worded incontestability clauses when the policy at issue defined disability in terms of when a sickness first manifests itself, thus allowing the insurer to exclude pre-manifesting conditions from coverage. *See, e.g., Button v. Connecticut General Life Ins. Co.*, 847 F.2d 584, 588–89 (9th Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 250 (1988) (Arizona law); *Keaten v. Paul Revere Ins. Co.*, 648 F.2d 299, 301–03 (5th Cir. Unit B 1981) (Georgia law); *Allen v. Aetna Life Ins. Co.*, 563 F.2d 1240, 1241–42 (5th Cir.1977) (Florida law); *Massachusetts Cas. Ins. Co. v. Forman*, 516 F.2d 425, 428–30 (5th Cir.1975), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976) (Florida law); *Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 644 A.2d 1098, 1104–08 (1994) (New Jersey law); *Mutual Life Ins. Co. of New York v. Hayden*, 87 Misc.2d 1039, 386 N.Y.S.2d 978, 981–82 (N.Y.Sup. Ct.1976), *aff'd*, 60 A.D.2d 823, 401 N.Y.S.2d 992 (N.Y.1978) (New York law);[23] 13 A.L.R.3d 1383 at § 5(a) (collecting cases). These cases have ultimately concluded that, despite its reference to pre-existing illnesses and conditions, the incontestability clause "leaves the insurer free to exclude pre-

---

**23.** In spite of this case, it appears that New York does not currently follow this approach. *See Monarch Life Ins. Co. v. Brown*, 125 A.D.2d 75, 512 N.Y.S.2d 99, 103 (N.Y.App.Div.1987) (Emphasis in original) (stating that although the *Hayden* court, in dicta, approved the *Forman* decision to support the insurer's position that it should be allowed to deny disability benefits for an illness manifesting itself prior to the policy date, "to follow the *Forman exist-manifest* distinction renders the statutorily-mandated incontestability clause a nullity, defeating the legislative intent in requiring such a clause"). *See also Fischer v. Massachusetts Cas. Ins. Co.*, 458 F.Supp. 939, 944 (S.D.N.Y.1978); *White v. Massachusetts Cas. Ins. Co.*, 465 N.Y.S.2d at 346.

manifesting diseases and conditions from the policy coverage."
*Equitable Life Assurance Soc'y of United States v. Bell,* 27
F.3d at 1280. The Supreme Court of New Jersey has recently
suggested that such an interpretation presently represents the
majority rule on this issue, stating:

> Most courts have read the language in ... [§ 441], or
> similar language, [despite the passage of the contestable
> period] to prohibit only rescission of the policy, not denial of
> a specific claim.

> \* \* \* \* \* \*

> The majority rule is that the incontestability clause does not
> provide a basis for an insured to recover for a condition that
> is not covered under the policy. Most courts have held that
>> [w]here loss is claimed by reason of disability, it is
>> necessary, under the average policy, that the cause of
>> such disability arise within the policy terms and after the
>> insurance has been effected. This is a condition of liabili-
>> ty, a condition of insurance.... The incontestability
>> clause does not apply under those circumstances, and
>> there can be no recovery unless the cause of disability
>> arose within the time designated.

*Haas,* 644 A.2d at 1104, 1105 (citing 1A John A. Appleman &
Jean Appleman, *Insurance Law and Practice* § 333 at 390
(1981)).[24] *See also Keaten,* 648 F.2d at 301 (stating that under
the majority view, the insurer "reserves the right to deny any
claim [after the incontestability period has run] if it is not
within the coverage as stated by the policy's terms"); *For-
man,* 516 F.2d at 428 (stating "[t]he great weight of authority
... holds that an incontestability clause ... does not deprive
the insurer from defending on the ground that the particular
disability was never within the policy coverage"). In adopting
this view, the "courts [generally] emphasize that the first
portion of the incontestability clause, rendering the statements
in the insured's application incontestable after the specified

---

**24.** The *Haas* court went on to list the jurisdictions following the
majority view, as well as those reaching a contrary result. 644 A.2d at
1105–06.

time period, relates solely to the validity of the policy and does not preclude the insured from limiting what is covered." *Bell,* 27 F.3d at 1280. *See, e.g., Button,* 847 F.2d at 588 (adopting the view that "the [incontestability] clause relates to the validity of the contract and not to the construction of policy provisions"); *Keaten,* 648 F.2d at 301 (finding that "after the period of incontestability has run, the insurer is only barred from contesting the validity of the policy itself . . . [but] still reserves the right to deny any claim if it is not within the coverage as stated under the policy's terms"); *Allen,* 563 F.2d at 1241 (recognizing that "[a]n incontestable clause does not bar the insur[e]r from proving that the loss was not covered by the terms of the policy"); *Forman,* 516 F.2d at 428 (holding that "an incontestable clause in a disability clause does not deprive the insurer from defending on the ground that the particular disability was never within the policy coverage"); *Haas,* 644 A.2d at 1104 (quoting 1A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 331 at 752 (1981)) (reasoning that "the 'better rule is clearly that the incontestability clause relates only to the validity of the contract, and should not affect in any way whatsoever the construction of the terms thereof' "). To this effect, the late Judge Cardozo, while Chief Judge of the New York Court of Appeals, explained:

> The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.

*Metropolitan Life Ins. Co. v. Conway,* 252 N.Y. 449, 169 N.E. 642, 643 (1930).

Notwithstanding these decisions, this issue remains open to significant debate. As one commentary has noted:

> The courts have uniformly construed incontestability clauses as barring a defense based upon fraud in the application for

insurance, after the specified period has passed. There is somewhat less uniformity on the question whether the claim may be resisted on the ground that the disability antedated the issuance of the policy, however. While most courts take the view that pre-existing disability is a defense to coverage rather than a 'contest,' and is thus not negated by the incontestability clause, there is authority to the contrary, even in situations where the clause expressly negates the contestability of the insured's prior condition of health. 13 A.L.R.3d at 1385. Indeed, a substantial minority of the courts faced with this question have rejected the insurer's attempt to exclude coverage for pre-manifesting illnesses in circumstances similar to those of the instant case. As one federal court recently explained:

> A growing minority of courts have rejected ... [the majori- ty approach] by favoring a plain meaning approach to the statutory and policy language. These cases uniformly hold that 'if an insured is not disabled for two years after issuance of the policy, then his claim for benefits cannot be denied on the grounds he had a pre-existing condition.'

*Oglesby v. Penn Mutual Life Ins. Co.*, 889 F.Supp. 770, 776–77 (D.Del.1995) (citing *Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. at 1001) (other citations omitted). As noted by the *Oglesby* court, these cases often reach this result on the basis of principles of statutory and insurance policy construction. For instance, in *Equitable Life Assurance Soc'y of the United States v. Bell,* the Seventh Circuit held that, under Indiana law, a statutorily required incontestability clause, worded similarly to the clause in the instant case,[25] barred "the insurer from attempting to exclude coverage for losses attributed to pre-manifesting diseases and conditions" after the contestability period had expired. 27 F.3d at 1282. *Bell* is particularly noteworthy because there, the insurer, as MONY does here, proposed the same reading of pre-existing

---

**25.** The policy at issue also provided that the insurer would pay benefits for sicknesses, which were defined as a "sickness or disease which first manifests itself while the policy is in force." 27 F.3d at 1276.

"to include only those diseases and conditions that, although they existed before the policy became effective, did not manifest themselves." *Id.* at 1280. In rejecting the insurer's position, the *Bell* court noted that although this question "has sharply divided the courts," the cases finding for the insurer uniformly emphasize that the first portion of the incontestability clause, dealing with the insurer's ability to contest a statement in the insured's application, "relates solely to the validity of the policy and does not preclude the insurer from limiting what is covered." *Id.* After indicating that it agreed with this interpretation of the "initial provision of the incontestability clause," the Seventh Circuit stressed that few of the cases finding for the insurer have addressed the second portion of the incontestability clause, "which bars the denial of coverage on the ground of pre-existence." [26] *Id.* at 1281. The court then focused on this part of the clause, explaining:

> As with any other contractual provision, we must accord [this portion of] the language of the statutorily mandated ... [incontestability clause] its plain and ordinary meaning. This provision states in no uncertain terms that after two years, no disability claim shall be denied on the ground that the underlying disease or condition 'existed' before the policy became effective. As we have suggested, the term 'exist' in its ordinary sense refers broadly to a state of being, without reservation as to other qualities, including manifestation. [*Monarch Life Ins. Co. v.*] *Brown,* 512 N.Y.S.2d at 103. Thus, in the absence of any clarification in the clause, we believe it is most naturally understood to include any pre-existing disease or condition, regardless of whether it manifested prior to the policy date. *Id.*

* * * * * *

---

**26.** The *Bell* court acknowledged that the Fifth Circuit in *Forman* did address this portion of the incontestability clause, reasoning that, when other terms in the policy exclude coverage for pre-manifesting conditions, the provisions barring denials for pre-existing conditions are rendered a nullity. The *Bell* court, however, concluded that this rationale was not persuasive, instead opting to give weight to the plain and ordinary meaning of this portion of the incontestability clause. *Bell,* 27 F.3d at 1281.

To insert into the clause a limitation to a disease or condition which existed but did not manifest prior to the effective date of the policy would be to evade the mandate of the legislature, and that we cannot sustain.

27 F.3d at 1281–82 (other citations omitted).[27]

Also relying on "the plain meaning approach to the statutory policy and language," a federal district court in *Wischmeyer v. Paul Revere Life Ins. Co.* concluded that, under Indiana law, "if the plain, unambiguous language [of the incontestability clause [28]] ... is followed," pre-existing conditions could not be used as a defense by the insurance company if the insured did not become disabled within two years. 725 F.Supp. at 1003. In explaining its decision, the court stated:

[B]reaking this [incontestability] clause down into its sequential steps reveals the following:

1. If an insured files a claim for disability;

2. And, if that disability began after two years from the date of issue;

3. Then the insurer *cannot* deny the claim because of a pre-existing condition.

Contrary to what some courts have concluded, this clause very clearly states that pre-existing conditions cannot be used to deny a claim after two years, unless the [insured] became disabled during those two years.

*Id.* (Emphasis in original). The *Wischmeyer* court opined further that the policy's definition of disability in terms of a sickness manifesting itself after the issuance of the policy was in direct conflict with the mandate of the legislature once two years has passed. . . . [N]owhere is the word . . .

---

**27.** As MONY points out, in *Bell*, unlike the present situation, the insurer failed to obtain the required approval from the Indiana Commissioner of Insurance to modify its policy to conform to the statute. 27 F.3d at 1282–83. We do not, however, see how this distinction diminishes the value of the *Bell* decision.

**28.** The incontestability clause, as well as the definitions of disability and sickness, at issue in *Wischmeyer*, contained almost identical language as is present in the instant case.

'manifest' used in this section of the clause mandated by the ... legislature. Rather, ... the term 'manifest' is injected into the policy elsewhere by the insurer.

As other courts have found, ... to allow coverage provisions of a policy to prevail over the statutorily required clauses is to thwart the mandate of the legislature. As one federal district court has noted, clauses in policies that seek to exclude pre-existing conditions attempt 'to nullify the protection of the incontestable clause by excluding from coverage illness which manifests itself before the policy is issued.' *Fischer v. Massachusetts Casualty Ins. Co.*, 458 F.Supp. 939, 945 (D. D.C. [sic] 1978). Such coverage provisions controvert the statutorily imposed incontestable clauses and thus cannot be considered where no disability is shown to have existed during the two-year period. *Id.* at 945.

725 F.Supp. at 1003–04 (other citations omitted).

Likewise, the United States District Court for the District of Delaware rejected an insurance's company's attempt to void coverage under a disability insurance policy[29] for a disability occurring outside of the two year incontestable period and arising from a condition known to the insured prior to the issuance of his policy, but not disclosed on his application, on the theory that the policy, as written, did not cover a claim for a disability arising from a sickness that first manifested itself prior to the issuance of the policy. *Oglesby v. Penn Mutual Life Ins. Co.*, 889 F.Supp. at 772. The *Oglesby* court began its analysis by broadly discussing incontestability clauses, noting that

provisions relating to misrepresentations by the insured only prohibit contests as to the validity of the policy; they 'do not prohibit contests which seek to establish that the

---

**29.** The policy at issue was subject to Delaware law which required such policies to contain a similarly worded incontestability clause as is contained in Ms. Holland's policy. The policy also defined disability in terms of when a sickness "which first makes itself known while th[e] policy was in force." 889 F.Supp. at 773.

event which has occurred was outside the risk assumed by the policy.'

*Id.* at 775 (citations omitted). After surveying the conflicting cases regarding whether an insurer is able to exclude coverage for pre-manifesting illnesses, despite the statutorily required provision prohibiting a denial of coverage for pre-existing illnesses after two years, the *Oglesby* court focused upon relevant Delaware principles of statutory and contractual interpretation, stating:

Delaware law mandates that clear language in an insurance policy should be given its ordinary and usual meaning.

The ... [policy at issue] clearly establishes its contractual boundaries by defining coverage for 'any sickness that first makes itself known while the policy is in force.' Pursuant to legislative mandate, the policy also sets forth what the policy does *not* cover, by way of an incontestability provision relating to what is excluded under the policy. The provision distinguishes between disabilities starting *within* two years of the issuance of the policy, and *after* two years from issuance of the policy.... [I]f, after more than two years after the policy issued, a disability arises from a pre-existing condition not specifically excluded, then it is covered.

This 'plain meaning' interpretation of the policy is supported by examination of the corresponding statutory language in the Delaware Code, which provides in relevant part that

'No claim for loss incurred as disability ... commencing 2 years from the date of issue of this policy shall be ... denied on the ground that a disease or physical condition not excluded from coverage by name or specific description ... had existed prior to the effective date of coverage of this policy.'

18 *Del.C.* § 3306(a)(2). The clear import of both the statutory and policy provisions [which clearly establish contractual boundaries by defining coverage for "any sickness that first makes itself known while the policy is in force"] is that 'if an insured is not disabled for two years after issuance of

the policy, then his claim for benefits cannot be denied on the grounds that he had a pre-existing condition.' *Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995, 1001 (S.D.Ind.1989). The statute requires an unequivocal promise by the insurer that that after two years, 'no disability claim shall be denied on the ground that the underlying disease or condition 'existed' before the policy became effective.' *See Equitable Life Assurance Soc'y v. Bell*, 27 F.3d at 1282 (construing substantially identical statute). The statute speaks plainly in terms of 'existing,' not 'manifesting' (or first making itself known); the term 'exist' ordinarily refers to a state of being, without qualification as to other qualities, such as manifestation. *Id.* Consequently, in the absence of such a distinction by the legislature, one must conclude that the Delaware legislature intended that a pre-existing condition includes those both known and unknown to the insured prior to the policy date. *See id.*

889 F.Supp. at 777–78 (other citations omitted) (Emphasis in original).[30]

We find the reasoning set forth by the Seventh Circuit, as well as the federal district courts in Delaware and Indiana, persuasive and consistent with Maryland's well-settled rules concerning the construction of insurance policies and statutes. As we recognized in *Progressive Cas. Ins. Co. v. Dunn*, 106 Md.App. 520, 665 A.2d 322 (1995), the rules governing the construction of insurance policies are as follows:

In the interpretation of the meaning of an insurance contract, we accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense. (Citation omitted.) Maryland does not follow the rule, adopted in

---

**30.** For a sampling of other cases refusing to recognize an "exist/manifest" distinction *see Provident Life and Accident Ins. Co. v. Altman*, 795 F.Supp. 216, 222–23 (E.D.Mich.1992) (Michigan law); *Monarch Life Ins. Co. v. Brown*, 125 A.D.2d 75, 512 N.Y.S.2d 99, 103 (N.Y.App.Div. 1987) (New York law); *Taylor v. Metropolitan Life Ins. Co.*, 106 N.H. 455, 214 A.2d 109, 114–15 (1965) (New Hampshire law). *See also* 13 A.L.R.3d 1383 at § 5(b).

many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. In the event of an ambiguity, however, extrinsic and parol evidence may be considered. If no extrinsic or parol evidence is introduced, or if the ambiguity remains after consideration of extrinsic or parol evidence that is introduced, it will be construed against the insurer as drafter of the instrument.

*Id.* at 528–29, 665 A.2d 322 (quoting *Cheney v. Bell National Life,* 315 Md. 761, 766–67, 556 A.2d 1135 (1989)). The Court of Appeals has explained that the determination of "the intention of the parties to the insurance contract . . . is the point of the whole analysis." *Pacific Indemnity Co. v. Interstate Fire & Cas. Co.,* 302 Md. 383, 388, 488 A.2d 486 (1985) (citations omitted). To this effect, Chief Judge Wilner noted in *Dunn,* that the first directive under the analysis of an insurance policy "is to give words their usual, ordinary, and accepted meaning . . . the test for doing so is to determine 'what meaning a reasonably prudent layperson would attach to the term' . . . [and in doing so] resort to dictionary definitions is appropriate." 106 Md.App. at 529, 665 A.2d 322 (quoting *Pacific Indemnity Co. v. Interstate Fire & Cas. Co.,* 302 Md. at 388, 488 A.2d 486).

 Applying these principles, we look first to the language of the clause at issue, which provides:

We may not reduce or turn down any claim for loss incurred [or] Disability [as defined in the policy] starting after two years from the Policy Date on the grounds that a disease or physical condition *existed prior to* the Policy Date, unless that disease or physical condition is excluded from coverage by name or specific condition.

(Emphasis added). This clause is phrased in terms of whether a disease or physical condition "existed prior to" the inception of the policy, with no reference to conditions that

merely manifested themselves. Webster's Dictionary defines the primary sense of the term "exist" broadly in terms of "to have real being." *Webster's Tenth New Collegiate Dictionary* 407 (1993). Other courts have recognized that, in the absence of clarification, the ordinary meaning of "exist" refers broadly to a state of being, without reservation as to other qualities, including manifestation. *See Bell*, 27 F.3d at 1281; *Oglesby*, 889 F.Supp. at 777; *Monarch Life Ins. Co. v. Brown*, 125 A.D.2d 75, 512 N.Y.S.2d 99, 103 (N.Y.App.Div.1987). With these definitions in mind, we feel that a reasonable person reading this clause, or its equivalent in § 441(2),[31] and giving the terms their ordinary meanings would conclude that, after the expiration of the incontestability period, no disability claim that was not specifically excluded by name or specific description, commencing two years after the policy's inception could be denied on the ground that the underlying disease or condition existed before the policy became effective, regardless of whether it manifested itself prior to the policy date.[32]

Because our analysis concerns a statutorily required provision, rules of statutory construction must also be referenced. Under these principles, "[w]hen construing a statute, our governing principle must be the Legislature's intent because, as [the Court of Appeals has] ... consistently stated, the cardinal rule in statutory construction is to effectuate the Legislature's broad goal or purpose." *Armstead v. State*, 342 Md. 38, 56, 673 A.2d 221 (1996) (citing *Gargliano v. State*, 334 Md. 428, 435, 639 A.2d 675 (1994)). "In our quest to discern legislative intent, we construe the statute as a whole and interpret the words of the statute according to their natural

---

**31.** Because the language of § 441(2) is almost identical to the disputed language in Ms. Holland's incontestability clause, our interpretation of this clause is also applicable to the statute.

**32.** Both parties cite to *Mutual of Omaha v. Goldfinger*, 254 Md. 272, 254 A.2d 683 (1969) to support their respective positions regarding the merits of recognizing an "exist/manifest" distinction when interpreting an incontestability clause. Because this case did not involve an incontestability clause, we do not feel that it affects our limited holding in this case pertaining to the recognition of an "exist/manifest" distinction under the circumstances of this case.

and commonly understood meaning." *Parrison v. State,* 335 Md. 554, 559, 644 A.2d 537 (1994) (citations omitted). In doing so, "each word ... [is] given its ordinary and popularly understood meaning." *Fish Market Nominee Corp. v. G.A.A., Inc.,* 337 Md. 1, 8, 650 A.2d 705 (1994) (citation omitted). If the "language is clearly consistent with the apparent purpose of the statute and the result is not absurd, no further research is required." *Lincoln Nat'l Life Ins. Co. v. Insurance Commissioner,* 328 Md. 65, 82, 612 A.2d 1301 (1992) (citation omitted).

■ As the cases make clear, the purpose behind this statutorily mandated incontestability clause is to prevent a claimant, after the passage of two years following the inception of an insurance policy, from the possibility of facing expensive litigation concerning his or her claim for benefits on the grounds of a pre-existing condition. In apparent agreement with this purpose, Section 441(2) states:

> No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

As we concluded, *supra,* a reasonable reading of these words would result in the conclusion that, after the incontestability period expired, the insurer could not deny a claim for a disability that commenced two years after the policy's inception, irrespective of whether the condition manifested itself before the inception of the policy. Because this interpretation of the statutory language is clearly consistent with the apparent purpose of the statute, we are satisfied that the legislature did not intend that an "exist/manifest" distinction, enabling an insurer to institute litigation concerning coverage of pre-existing conditions after the expiration of the two year contestability period, be read into the statute.

We cannot agree with MONY's suggestion that because § 441(2) expressly allowed it to define the term "disability" it

should be permitted to define the term in a manner that effectively renders the clause meaningless. As recognized by the Seventh Circuit,

> [b]y ... pointing out the definitional differences between terms that are statutorily required [by the incontestability clause], and terms which are inserted into the contract at the behest of the insurer, [the insurer] 'attempts to nullify the protection of the incontestable clause by excluding from coverage illness which manifests itself before the policy is issued.' *Fischer v. Massachusetts Cas. Ins. Co.*, 458 F.Supp. 939, 945 (S.D.N.Y.1978). Such an interpretation would controvert the statutorily imposed incontestability clause, and reduce its protection below that which was mandated by the legislature.

*Bell*, 27 F.3d at 1282 (other citations omitted). *See also Oglesby*, 889 F.Supp. at 778; *Wischmeyer*, 725 F.Supp. at 1003–04. Following this rationale, we will not allow MONY to rewrite § 441(2), which is clearly phrased in terms of "existing," not "manifested," in a manner that, after the expiration of the incontestability clause, limits the statute's force to diseases or conditions that exist but did not manifest themselves before the inception of the policy in direct contravention of the purpose of the clause.[33]

Bolstering our conclusion that Maryland should not, in the instant case, adopt an "exist/manifest" distinction is the stipulation reached by the parties. Specifically, the parties stipulated that the MIA has historically interpreted § 441 against MONY's position, agreeing:

---

**33.** In reaching this conclusion, we are cognizant of the "recognized rule of construction that a contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause or phrase so that a court does not cast out or disregard a meaningful part of the writing." *Bausch & Lomb Inc. v. Utica Mutual Ins. Co.*, 330 Md. 758, 782, 625 A.2d 1021 (1993) (citing *Dahl v. Brunswick Corp.*, 277 Md. 471, 478–79, 356 A.2d 221 (1976); *Sagner v. Glenangus Farms*, 234 Md. 156, 167, 198 A.2d 277 (1964)). We feel, however, that the clear meaning of the statutorily imposed language of § 441(2), as well as the purpose of the statute, make it impossible to give full effect to MONY's definitions of disability and sickness.

The Maryland Insurance Administration ... has historically interpreted MD. ANN. CODE, art. 48A, § 441 to prohibit an insurance company from denying or reducing a claim after two years from the effective date of the policy because the sickness causing the loss or claim manifested itself prior to the effective date of the policy.

Although the basis for this stipulation is not as clear as it could be in the record, there is some support for it in the Maryland Insurance Guidelines ("the Guidelines"), which were attached to the stipulation.[34] The comment to Guideline 4 provides:

4.3.1 *Comment.* Many health insurance policies exclude liability which arises from a condition first manifesting itself prior to the effective date of coverage. The insurer's right to deny liability on the ground of prior origin is limited by law to the first one, two or three policy years, depending on applicable law or the provisions of the contract if more favorable.

Guideline 5.3 states:

5.3 *Prior Origin Defense Limited.* Information revealed on the application may cause the policy to be ridered or endorsed to exclude liability for a preexisting condition. Otherwise, the insurer may not use the defense of prior origin in connection with a claim based on such preexisting condition unless there are other unadmitted details which clearly make the condition of materially greater underwriting significance than is shown in the application or than which [sic] reasonable evaluation would have suggested.

Finding that these particular guidelines could provide sufficient support for the parties' stipulation regarding the histori-

---

**34.** These Guidelines, entitled "Underwriting of Health Insurance Policies," were "issued in accordance with Sections 374 and 26 of Article 48A of the Annotated Code of Maryland and are designed for the protection of the public in the purchase of health insurance policies." They were made applicable to all health insurers, effective 1 August 1970.

cal interpretation of § 441,[35] we will not now question the substance of this agreement that was expressly made applicable to this appeal.[36]

As to the appropriate weight that we should now give to the parties' express agreement that the MIA has historically interpreted § 441 against MONY's position, we look to *Magan v. Medical Mutual Liability Ins. Soc'y of Maryland,* 331 Md. 535, 629 A.2d 626 (1993), for guidance, wherein the Court of Appeals explained:

> [W]here the words of a statute leave room for interpretation as to its meaning, we will ordinarily give some weight to the construction given the statute by the agency responsible for administering it. The degree of weight to be given an administrative interpretation varies according to a number of factors, including whether the interpretation has resulted in a contested adversary proceeding or rule-making process, whether the interpretation has been publicly established, and the consistency and length of the administrative interpretation or practice.

*Id.* at 546, 629 A.2d 626 (citations omitted). Although the first factor regarding whether the MIA's interpretation has resulted in a contested adversary proceeding or rule-making process is apparently not satisfied in this case, a reading of the stipulation reveals that the MIA's interpretation appears to be publicly established, long-standing, and well known in the insurance industry (at least among those insurers electing legitimately to do business in Maryland), and is therefore

---

**35.** As MONY points out, there are sections found in the Guidelines that could be construed to support its position. The mere existence of conflicting guidelines, however, will not now be used to question the merits of the parties' already agreed upon historical interpretation of § 441.

**36.** At oral argument before this Court, MONY's counsel argued for the first time, without any support whatsoever, that the stipulation concerning the historical interpretation of § 441 was wrong, and asserted that MONY was misled into agreeing to it. Because such a contention, having been raised for the first time on appeal, was not properly preserved for appellate review, it will not be addressed. *See* Md. Rule 8–131(a).

entitled to receive some weight. Accordingly, we will utilize this portion of the stipulation, which is consistent with our rationale, as further support for our conclusion that in the present case, once the contestability period expired, § 441(2) barred MONY from attempting to exclude coverage for losses attributed to pre-manifesting diseases and conditions.

### III. & IV.

■ Having determined that, under the proper interpretation of § 441, MONY could not deny Ms. Holland's claim for her disability that commenced after the contestability period expired, on the ground that her condition manifested itself prior to the inception of the policy, we must determine whether the lower court correctly found that MONY was not required to pay Ms. Holland benefits under her policy. The Commissioner contends that MONY is obligated to pay Ms. Holland's claim by virtue of the stipulation entered into at the administrative proceeding. We agree.

Stipulation no. 25 provides:

In the event the Insurance Commissioner affirms the December 14, 1993, Notice and Order, MONY agrees not to deny payment for the claim at issue on the ground that the Insured's condition of Acute and Chronic Anxiety with Panic Attacks first manifested itself prior to the effective date of the Policy, and, the MIA agrees not to hold that MONY's initial declination was a § 230A(c)(2) violation. This agreement, however, will in no way impede either Party's right to an appeal nor MONY's right to request a Stay from the court on the disability payments pending the outcome of the appeal.

As indicated, *supra*, MONY and the MIA entered into the stipulation before the Commissioner in order to obtain a "statutory interpretation of . . . § 441," and agreed that this purpose would remain in effect during any appeal arising from the Commissioner's interpretation. In stipulation no. 25, the parties agreed further that if the Commissioner affirmed the MIA's order interpreting § 441 against MONY's position that

MONY would not deny payment for the claim at issue on the ground that Ms. Holland's disability manifested itself prior to the effective date of the policy. In fact, the parties agreed that the only ground that MONY gave Ms. Holland in support of its denial of her claim was based on its interpretation of § 441.[37] From this, we believe that it logically follows that, under the stipulation, MONY effectively agreed to pay Ms. Holland's claim in accordance with the terms of her policy if the Associate Commissioner's interpretation of § 441 against MONY's position was affirmed.[38] Accordingly, the circuit court was correct in its preliminary finding that, once the interpretation of § 441 against MONY's position was affirmed, the first sentence of stipulation no. 25 would have required MONY to pay Ms. Holland's claim.

The circuit court then went on to find that the second sentence of stipulation no. 25, which gave either party the right to appeal any decision of the Commissioner, as well as giving MONY the right to request a stay from the court on the disability payments pending the outcome of the appeal, "muddled" the otherwise clear result. Our reading of the stipulation as a whole, however, yields a different interpretation of this sentence. Given that the purpose behind the stipulation was to determine the correct interpretation of § 441, and, as we concluded, *supra*, MONY effectively agreed to pay Ms. Holland's claim if the Associate Commissioner's interpretation of § 441 against its position was affirmed, we feel that the language of the second sentence merely gave MONY the limited right to refuse payment of the claim if the interpretation of § 441 was overturned in the course of any judicial review of the Associate Commissioner's decision. As a result, as long as our interpretation of § 441 stands, MONY

37. As we indicated in footnote 8, *supra,* this portion of the stipulation is supported by the correspondence that MONY sent to Ms. Holland.

38. We note that we do not see any merit in MONY's claim that there is a dispute concerning the full meaning of the stipulation. There is, therefore, no merit to MONY's argument that we "cannot resolve . . . [a dispute concerning the interpretation of the Stipulation] as the case is presently postured."

cannot under its agreement refuse to pay Ms. Holland's claim on the ground that her condition manifested itself prior to the issuance of her policy.

Based on our conclusion, *supra,* that subject to any further review on the limited issue of the correct interpretation of § 441, MONY must pay Ms. Holland's claim in accordance with the terms of her policy, it is not necessary to address the merits of whether there were any technical violations of the insurance code committed by MONY.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND REVERSED IN PART IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE (CROSS–APPELLANT).**